In the Matter of CHARLES WOLFE, Petitioner, *v.* THE HONORABLE RICHARD Y. C. AU, Judge of the Circuit Court of the First Circuit, State of Hawaii, Respondent, and STATE OF HAWAII, Real Party in Interest

NO. 9888

(S. P. NO. 6429)

AUGUST 13, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

*Per Curiam.* Purporting to invoke the jurisdiction of this court pursuant to Hawaii Revised Statutes (HRS) § 602-5(4), Petitioner Charles Wolfe prayed that a Writ of Prohibition issue to compel the Circuit Court of the First Circuit to effect his release from custody. Finding no basis for the exercise of our extraordinary powers, we summarily denied his petition. We now set forth in detail our reasons for doing so.

 

## I.

The petitioner is a Hawaii resident who has been engaged in business in the Federated States of Micronesia (FSM). He was arrested in Honolulu on March 29, 1984 and held thereafter at Oahu Community Correctional Center until his extradition to Micronesia. The arrest warrant charged him with violations of sections of the FSM Criminal Code, alleging deception and theft by failure to make a required deposit of funds received from the sale of air travel tickets. The Governor of Hawaii signed a Governor's Warrant authorizing the extradition on April 12, 1984.

Shortly thereafter, Wolfe sought his release from custody by petitioning the circuit court for a writ of habeas corpus on grounds that the FSM is a foreign nation without authority to invoke the provisions of HRS Chapter 832, the Hawaii Uniform Criminal Extradition Act. He argued (1) Hawaii had no power to act in a matter governed by article I, section 10 of the United States Constitution[1] and 18 U.S.C. §§ 3181, 3184, and 3185 ( *i.e.,* federal law governed and federal courts had exclusive jurisdiction),[2] (2) the FSM is not a "Territory" of the United States within the meaning of HRS § 832-1, and (3) his detention was patently illegal. *United States v. Rauscher,* 119 U.S. 407 (1886), and *Factor v. Laubenheimer,* 290 U.S. 276 (1933), he claimed, were controlling and ruled out action by the State.

On May 10, 1984, the circuit court denied the habeas corpus petition and a Motion for Supervised Release and/or Bail Reduction. It found the FSM is a territory of the United States, not a sovereign country, and HRS Chapter 832 could be employed to

---

[1] U.S. Const. art. I, § 10 prohibits states from entering into treaties or agreements with foreign nations without the consent of Congress. In this case, Wolfe asserts that Hawaii, a state, cannot extradite him to a foreign nation (the FSM).

[2] 18 U.S.C. § 3181 reads:

The provisions of this chapter relating to the surrender of persons who have committed crimes in foreign countries shall continue in force only during the existence of any treaty of extradition with such foreign government.

Read together with sections 3184 and 3185, section 3181 establishes exclusive federal jurisdiction in any international extradition. There must be a valid treaty between the United States and the nation seeking extradition; otherwise, the United States is unable to honor the extradition request.

extradite a person to Micronesia. The court therefore concluded resort to federal courts was not necessary to effect Wolfe's extradition and the Governor's Warrant was sufficient and valid under the standards established in *Murray v. Burns,* 48 Haw. 508, 405 P.2d 309 (1965), and *Michigan v. Doran,* 439 U.S. 282 (1978).

Wolfe then petitioned us for relief. Although he entitled his pleading a Petition for a Writ of Prohibition, in essence he prayed that this court order the circuit court to issue a writ of habeas corpus. The FSM joined the State in opposing the petition and argued it remained an American territory despite recent events that may have given rise to misapprehensions about the applicability of the Uniform Criminal Extradition Act in a situation where the FSM is the demanding territory.[3]

## II.

Our original jurisdiction permits us to issue writs of prohibition when warranted. HRS § 602-5(4). But as we said in *Honolulu Advertiser, Inc. v. Takao,* 59 Haw. 237, 241, 580 P.2d 58, 62 (1978):

> The writ of prohibition is an *extraordinary remedy,* the object of which is not to cure a mere legal error or to serve as a substitute for appeal, but to *restrain a judge of an inferior court from acting beyond or in excess of his jurisdiction.* . . . Only where special circumstances are shown to exist which render the mat-

---

[3] The Uniform Criminal Extradition Act is ancillary to and in aid of the Extradition Clause, U.S. Const. art. IV, § 2, cl. 2, and the federal implementing statute, 18 U.S.C. § 3182. *In re Robert,* 122 R.I. ___, ___, 406 A.2d 266, 268 (1979). The courts of an asylum state are bound by decisions of the United States Supreme Court in construing and applying the Extradition Clause and the federal implementing statute. *Murray v. Burns,* 48 Haw. at 516-17, 405 P.2d at 315. The mechanics of the extradition process within a particular state are governed by the provisions of the Uniform Criminal Extradition Act insofar as they do not conflict with federal constitutional and statutory provisions. *Application of Carden,* 291 Or. 515, 520, 635 P.2d 341, 343 (1981). All fifty states have adopted the Uniform Criminal Extradition Act. In addition, all United States territories and possessions have enacted the Act.

HRS § 832-1 defines the term "state" for extradition purposes as "includ[ing] any state other than this State, the District of Columbia, or a *Territory,* organized or unorganized, *of the United States.*" (Emphasis added).

*Compare* HRS § 832-1 with 1 FSM CODE § 1001(3) (1982) defining the term "state" for extradition purposes as "refer[ring] to any State of the *United States* . . . its *territories* and possessions, organized or unorganized . . . ." (Emphasis added).

ter a rare and exceptional case will this court, in its discretion, consider deviating from [its] settled rule.

(Emphasis added) (citations omitted). The circumstances that would have warranted an exercise of our extraordinary powers, however, were clearly absent, for the petitioner made no showing that the circuit judge exceeded his jurisdiction in denying the requested relief. And the Uniform Criminal Extradition Act was properly invoked to effect Wolfe's extradition to Micronesia.

### A.

Wolfe first argued the FSM, whence the request for his return to face criminal charges originated, was not a proper demanding party under HRS Chapter 832. He claimed the extradition of a putative law violator to the FSM, an independent country, could not be accomplished under a state law. If we had accepted this thesis, Wolfe could only have been returned for prosecution in Micronesia in accord with a treaty between the United States and the FSM. *See* notes 1 and 2 *supra*. In the course of oral argument, however, Wolfe acknowledged the United States and the FSM were not parties to an extradition treaty. Thus, the adoption of his argument would have placed both of them in an anomalous and embarrassing predicament — neither could have sought the return of a law violator from the other. But we found Wolfe's thesis was devoid of merit.

Micronesia is part of the Trust Territory of the Pacific Islands (TTPI) which is administered by the United States pursuant to a United Nations Security Council Trusteeship Agreement. Primary responsibility for governing the TTPI rests with the Secretary of the Interior. *See In re Bowoon Sangsa Co.,* 720 F.2d 595, 600 (9th Cir. 1983); *Gale v. Andrus,* 643 F.2d 826, 829 (D.C. Cir. 1980). Recent developments, however, have engendered confusion about the FSM's political status.

The FSM has ratified a Compact of Free Association that defines its status and powers as an independent polity with close political, military, and economic ties to the United States.[4] But the

---

[4] For a copy of the compact, *see* MacDonnald, *Termination of the Strategic Trusteeship: Free Association, The United Nations and International Law,* 7 Brooklyn J. Int'l L. 235, 283-327 (1981).

compact has yet to be approved by the United States Senate and the United Nations. It must also be ratified by those bodies before the incipient nation is set free. True, the FSM has advanced rapidly toward this goal of independence; nevertheless, the United States has yet to relinquish control in several significant respects. For one, the Secretary of the Interior may still veto enactments of the FSM legislature, and the federal government still controls all matters regarding trade between the FSM and independent nations. *See* Department of Interior Secretarial Order 3039 (1979);[5] Clark, *Self-Determination and Free Association – Should the United Nations Terminate the Pacific Islands Trust?*, 21 Harv. Int'l L.J. 1, 13-14 (1980). *See also* MacDonnald, note 4 *supra*, at 235-82. And while the FSM has a constitution modeled on the federal constitution and a Bill of Rights that encompasses the guarantees of due process, equal protection, speedy trial, and assistance of counsel, FSM Const. art. IV,[6] it cannot be denied that a shred of American control remains in this area too. Despite the establishment of a comprehensive judicial system,[7] the United States Pacific Islands Trust Territory High Court still retains *certiorari* power over the FSM Supreme Court pursuant to Secretarial Order 3039. *See* Bowman, *Legitimacy and Scope of Trust Territory High Court Power to Review Decisions of Federated States of Micronesia Supreme Court: the Otokichy Cases*, 5 U. Haw. L. Rev. 57, 66-68 (1983). Hence, it is evident that the FSM, as part of the TTPI, cannot be deemed an independent nation.

B.

But the retention and exercise of control by the United States did not of itself render the FSM a "territory" of the United States within the meaning of our interstate rendition law, HRS Chapter

---

[5] *Reprinted in* 2 FSM CODE 950.

[6] For a copy of the FSM Constitution, *see* Turcott, *Jurisdiction: The Beginnings of the Federated States of Micronesia Supreme Court*, 5 U. Haw. L. Rev. 361, 372-83 (1983).

[7] *Id.* at 361-71, 384-90.

832,[8] and the federal statute implementing the Extradition Clause, 18 U.S.C. § 3182,[9] from which the state law must take meaning and be consistent with. *See Pacileo v. Walker,* 449 U.S. 86, 87-88 (1980), *reh'g denied,* 450 U.S. 960 (1981); *Michigan v. Doran,* 439 U.S. at 287-88; *Murray v. Burns,* 48 Haw. at 516-17, 405 P.2d at 315; *see also* note 3 *supra.* Nor could we have assumed from a mere absence of independent status that the federal-state rendition scheme applied in this instance; for "federal legislation is not automatically applicable to the Trust Territory. Instead, Congress must manifest an intention to include the Trust Territory within the coverage of a given statute before the courts [may] apply its provisions." *Enewetak v. Laird,* 353 F. Supp. 811, 815 (D. Haw. 1973) (footnote omitted). *See also Gale v. Andrus,* 643 F.2d at 830. Still, we think the necessary congressional design to include territories like the FSM within the ambit of the federally governed system of interstate extradition has been found by the Supreme Court.

---

[8] HRS § 832-2 reads in pertinent part:

[I]t is the duty of the governor of this State to have arrested and delivered up to the executive authority of any state of the United States [, the term "state" includes United States, territories and possession, note 4 *supra,*] any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this State.

The FSM counterpart to HRS § 832-2 is 1 FSM CODE § 1002; it reads:

*Fugitives from justice — Duty of the High Commissioner.* Subject to the provisions of this chapter the High Commissioner shall have arrested and delivered up to the executive authority of any State any person charged in that State with treason, felony, or other crime, who has fled from justice and is found in the Trust Territory.

[9] 18 U.S.C. § 3182 reads:

Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or the chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

An issue posed for determination by the Court in *New York ex rel. Kopel v. Bingham,* 211 U.S. 468 (1909), was whether the governor of Puerto Rico had the same power under section 5278 of the Revised Statutes of the United States[10] that the governor of any organized territory had "to make a requisition upon the governor of the State of New York for the arrest and surrender of [a] fugitive criminal of Porto Rico [sic] who had taken refuge in the State of New York." 211 U.S. at 472. The petitioner contended Puerto Rico was not a "territory" within the meaning of section 5278; he argued it possessed none of the attributes of a territory like Arizona, which "[had] been organized under a separate government in the expectation that it or some part thereof [would] ultimately be admitted into the Union as a State." 211 U.S. at 470.

The Court disposed of the contention in short order, concluding: "It is impossible to hold that Porto Rico [sic] was not intended to have power to reclaim fugitives from its justice, and that it was intended to be created an asylum for fugitives from the United States." 211 U.S. at 474. There was no reason for us to view the rendition of criminals between Hawaii and the FSM in a different light. Congress and the State legislature could not have meant that the FSM would be without means to reclaim fugitives from its justice or that it would be an asylum for fugitives from American justice. The FSM is a "Territory of the United States" for purposes of extraditing criminals pursuant to 18 U.S.C. § 3182 and HRS Chapter 832 though destined for nationhood rather than statehood. *See* note 3 *supra.*

---

[10] Section 5278 of the Revised Statutes read in pertinent part:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony or other crimes, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive and to cause the fugitive to be delivered to such agent when he shall appear. . . ."

These provisions are reiterated in 18 U.S.C. § 3182.

### III.

The petitioner's plea for intercession by this court also covered two other points, but neither provided grounds for us to act.

### A.

Wolfe urged that the purportedly evil motives of the authorities of the demanding territory in prosecuting him provided a sound basis for action on our part. Yet in proceedings where interstate rendition is being resisted, the scope of review in a court of the asylum state is limited. *Murray v. Burns*, 48 Haw. at 515, 405 P.2d at 314. As the Supreme Court instructs us:

> A governor's grant of extradition is *prima facie evidence that the constitutional and statutory requirements have been met. . . .* Once the governor has granted extradition, a court considering release on *habeas corpus* can do *no more* than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

*Michigan v. Doran*, 439 U.S. at 289 (emphasis added) (citations omitted). Clearly, the "contention that the charges against [the petitioner] were instituted through improper motives . . . afford[ed] no basis for relief against extradition." *Murray v. Burns*, 48 Haw. at 520, 405 P.2d at 317.

### B.

Wolfe also claimed he would not be provided due process in a trial before a court in Micronesia and the denial of constitutional protection would not be reviewable by an American court. It would have been presumptuous for us to assume his trial by a Micronesian court would be without procedural safeguards designed to ensure fairness. The FSM, as we observed, has adopted a constitution which includes a Bill of Rights, and the High Court of the Trust Territory is empowered to review decisions of the Supreme Court of the Federated States of Micronesia by way of certiorari. *See*

Bowman, *supra*, at 66-68. Moreover, we have declared that allegations of "prospective irreparable injury and deprivation of constitutional rights . . . present[ed] matters that [were improper for] the trial court [to consider] in . . . ruling on [an] application for a writ of habeas corpus." *Murray v. Burns*, 48 Haw. at 525, 405 P.2d at 319.

*Christopher L. Chamness,* on the writ for petitioner.

*Alvin T. Nagao,* Deputy Attorney General (with him on answer to petition for writ: *Tany S. Hong,* Attorney General, *Michael A. Lilly* and *John Campbell, Jr.,* Deputy Attorneys General, *Charles F. Marsland, Jr.,* Prosecuting Attorney, and *Peter C. K. Fong,* Deputy Prosecuting Attorney) for State of Hawaii.

*Vernon F. L. Char (Michael K. Kawahara* with him on the brief; *Damon, Key, Char & Bocken,* of counsel) for amicus curiae.