STATE OF HAWAII, Petitioner, *v.* HIROSHI OSHIRO, Judge of the District Court of the First Circuit, Honolulu Division, and EDWIN R. ATON, JR., Respondents

NO. 12183

(CASE NO. 86-9319)

NOVEMBER 24, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

## OPINION OF THE COURT BY HAYASHI, J.

In this original proceeding, Petitioner State of Hawaii (hereinafter "State") seeks the issuance of a writ of mandamus and/or prohibition for an order vacating the trial court's grant of a deferred acceptance of no contest (hereinafter "DANC") plea to Respondent Edwin R. Aton, Jr. (hereinafter "Aton") pursuant to Hawaii Revised Statutes (hereinafter "HRS") chapter 853 (1985). State had charged Aton with second-degree negligent homicide under HRS § 707-704 (1985). State contends that 1) a writ of mandamus and/or prohibition is the only appropriate remedy since no appeal exists from the grant of a DANC plea; and 2) the trial court abused its discretion because no DANC plea may be given for any negligent homicide case. We agree that State cannot appeal from the grant of a DANC plea but discern no abuse of discretion. The issuance of a writ is therefore denied.

### I.

### BACKGROUND FACTS.

The facts are not controverted. In February 1986 at the intersection of Hunakai and Ulumaika Streets in Honolulu, the car driven by Aton struck and killed jogger Carol Rollman. Aton had just finished his first night-shift at his new job, was driving in excess of the twenty-five mile per hour posted speed limit, and was not wearing any corrective lenses as required by his Hawaii driver's

license. His victim, however, was jogging in the street with a stereo headset on (thereby reducing her ability to detect oncoming traffic) and had, according to Aton, suddenly darted in front of his car without first looking.

After he was charged with second-degree negligent homicide, Aton moved for the granting of a DANC plea. State opposed arguing that the legislature intended to preclude the use of DANC pleas in all cases of "negligent" killings. Aton responded that HRS § 707-704 involves "simple negligence," which is distinguishable from "negligence," and is thus not within the class of offenses for which DANC pleas may not be given.

The trial court, agreeing with Aton's position, granted the DANC plea. State then petitioned this court for a writ of mandamus and/or prohibition claiming that it possessed no other means to seek review of the trial court's decision. Aton, while asserting that the trial court committed no abuse of discretion, has not disputed State's argument about the lack of a statutory basis to appeal the granting of a DANC plea.

## II.

### QUESTIONS PRESENTED.

We will address the issues posed in the following order:
1. Whether State can appeal the granting of a DANC plea? NO.
2. Whether the trial court abused its discretion by granting a DANC plea for Aton's violation of HRS § 707-704(1)? NO.

## III.

### THE APPEALABILITY OF THE GRANTING OF A DANC PLEA.

State initially maintains that it lacks the statutory authority to appeal the granting of a DANC plea, so a writ of mandamus and/or

prohibition under HRS § 602-5(4) (1985)[1] is the only available remedy. Aton is in apparent agreement with this proposition.

A writ of prohibition is an extraordinary remedy which may not be utilized as a substitute for an appeal. *Gannett Pacific Corp. v. Richardson,* 59 Haw. 224, 580 P.2d 49 (1978). Similarly, a writ of mandamus will not issue unless the petitioner demonstrates 1) a clear and indisputable right to relief; and 2) a lack of other means to adequately redress the wrong or to obtain the requested action. *State ex rel. Marsland v. Shintaku,* 64 Haw. 307, 640 P.2d 289 (1982) (per curiam).

We begin our analysis of this question by noting that the right of appeal in a criminal case is purely statutory and exists only when given by some constitutional or statutory provision. *State v. Swafford,* 68 Haw. ___, 729 P.2d 385 (1986); *State v. Ferreira,* 68 Haw. ___, 709 P.2d 607 (1985). State may accordingly only appeal in those limited instances established by HRS § 641-13 (1985). This statute reads:

> *By State in criminal cases.* An appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court, subject to chapter 602, in all criminal cases, in the following instances:
>
> (1) From an order or judgment quashing, setting aside, or sustaining a motion to dismiss, any indictment or information or any count thereof;
>
> (2) From an order or judgment, sustaining a special plea in bar, or dismissing the case where the defendant has not been put in jeopardy;
>
> (3) From an order granting a new trial;

---

[1] HRS § 602-5 reads in relevant part:

*Jurisdiction and powers.* The supreme court shall have jurisdiction and powers as follows:

. . . .

(4) To exercise original jurisdiction in all questions arising under writs directed to courts of inferior jurisdiction and returnable before the supreme court, or if the supreme court consents to receive the case arising under writs of mandamus directed to public officers to compel them to fulfill the duties of their offices; and such other original jurisdiction as may be expressly conferred by law . . . .

(4) From an order arresting judgment;

(5) From a ruling on a question of law adverse to the State where the defendant was convicted and appeals from the judgment;

(6) From the sentence, on the ground that it is illegal;

(7) From a pretrial order granting a motion for the suppression of evidence, including a confession or admission, or the return of property in which case the intermediate appellate court or the supreme court, as the case may be, shall give priority to such an appeal and the order shall be stayed pending the outcome of the appeal;

(8) From an order denying a request by the State for protective order for nondisclosure of witness for their personal safety under Rule 16(e)(4) of the Hawaii Rules of Penal Procedure, in which case the intermediate appellate court or the supreme court, as the case may be, shall give priority to such appeal and the order shall be stayed pending outcome of such appeal;

(9) From a judgment of acquittal following a jury verdict of guilty.

A DANC plea is not a conviction nor is it a sentence. *See State v. Ritte,* 68 Haw. \_\_\_\_, 710 P.2d 1197 (1985); HRS § 853-1 (1985). The granting of a DANC plea, moreover, is not listed as an appealable decision by HRS § 641-13. State therefore lacks the authority to appeal the granting of a DANC plea, and we thus adopt the reasoning of the Hawaii Intermediate Court of Appeals to that effect in *State v. Johnson,* 5 Haw. App. 357, 692 P.2d 1171 (1984). *See State v. Bickle,* 60 Haw. 576, 592 P.2d 832 (1979); *see also State v. Miura,* 6 Haw. App. \_\_\_\_, 730 P.2d 917 (1986).

In *State v. Keahi,* 66 Haw. 364, 662 P.2d 212 (1983), and *State v. Brown,* 1 Haw. App. 602, 623 P.2d 892 (1981) (per curiam), State appealed from a deferred acceptance of guilty (hereinafter "DAG") plea and a DANC plea, respectively. No party, though, raised the jurisdictional issue then. We now hold that HRS § 641-13 does not confer on State the authority to appeal from the granting of DAG pleas or DANC pleas. *See State v. Brandimart,* 68 Haw. \_\_\_\_, 720 P.2d 1009 (1986) (overruling the *State v. Ortiz,* 4 Haw. App. 143,

662 P.2d 517 (1983), *aff'd on other grounds,* 67 Haw. 181, 683 P.2d 822 (1984), holding which recognized the tolling effect of a motion for reconsideration in a criminal case).

Because State cannot appeal the granting of a DANC plea and possesses no other adequate legal remedy, this case may be decided pursuant to HRS § 602-5(4). *See State ex rel. Marsland v. Town,* 66 Haw. 516, 668 P.2d 25 (1983).

### IV.

### THE CORRECTNESS OF GRANTING A DANC PLEA FOR A SECOND-DEGREE NEGLIGENT HOMICIDE.

State maintains that the trial court exceeded its jurisdiction by granting a DANC plea for Aton's second-degree negligent homicide. Aton replies that the trial court properly exercised its discretion because the controlling statutes preclude the granting of DANC pleas to "negligence" homicides, and not "simple negligence" killings. Because of the complex analysis required to discuss this issue, we must first analyze A) the statutes at issue; then B) the relevant legislative history; and finally C) the application of the statutes to the instant action.

### A.

### THE CONTROLLING STATUTES.

Although we have rejected an approach to statutory construction which is limited to the words of the statute, it is still fundamental that the statutory language is the starting point for any interpretation. *State v. Moniz,* 69 Haw. ____, 742 P.2d 373 (1987). Any interpretation, though, must be consistent with the legislative purpose, *State v. Kala,* 6 Haw. App. ____, 718 P.2d 1117 (1986), and cannot contradict the plain and obvious meaning of the law. *State v. Rodrigues,* 68 Haw. ____, 706 P.2d 1293 (1985).

The statutes indicating the scope of DAG pleas and DANC pleas read in relevant part (emphasis added):

§ *853-1 Deferred acceptance of guilty plea or nolo contendere plea;*

*discharge and dismissal, expungement of records.* (a) Upon proper motion as provided by this chapter:

    (1) When a defendant voluntarily pleads guilty or nolo contendere, prior to commencement of trial, to a felony, misdemeanor, or petty misdemeanor;

    (2) It appears to the court that the defendant is not likely again to engage in a criminal course of conduct; and

    (3) The ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law,

the court, without accepting the plea of nolo contendere or entering a judgment of guilt and with the consent of the defendant and after considering the recommendations, if any, of the prosecutor, may defer further proceedings.

(b) The proceedings may be deferred upon any of the conditions specified by section 706-624. The court may defer the proceedings for such period of time as the court shall direct but in no case to exceed the maximum sentence allowable. The defendant may be subject to bail or recognizance at the court's discretion during the period during which the proceedings are deferred.

(c) Upon the defendant's completion of the period designated by the court and in compliance with the terms and conditions established, the court shall discharge the defendant and dismiss the charge against the defendant.

(d) Discharge of the defendant and dismissal of the charge against the defendant under this section shall be without adjudication of guilt, shall eliminate any civil admission of guilt, and is not a conviction.

(e) Upon discharge of the defendant and dismissal of the charge against the defendant under this section, the defendant may apply for expungement not less than one year following discharge, pursuant to section 831-3.2.

§ *853-4 Chapter not applicable; when.* This chapter shall not apply when:

    (1) The offense charged involves *the intentional, knowing, reckless, or negligent killing of another person;*

(2) The offense charged involves the intentional, knowing, or reckless bodily injury or serious bodily injury of another person . . . .

"Negligently" is defined by HRS § 702-206(4) (1985) as:

(a) A person acts negligently with respect to his conduct when he should be aware of a substantial and unjustifiable risk taken by engaging in such conduct.

(b) A person acts negligently with respect to attendant circumstances when he should be aware of a substantial and unjustifiable risk that such circumstances exist.

(c) A person acts negligently with respect to a result of his conduct when he should be aware of a substantial and unjustifiable risk that his conduct will cause such a result.

(d) A risk is substantial and unjustifiable within the meaning of this subsection if the person's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a law-abiding person would observe in the same situation.[2]

By contrast, HRS § 707-704 (1985) provides (emphasis added):

*Negligent homicide in the second degree.* (1) A person is guilty of the offense of negligent homicide in the second degree if he causes the death of another person by *the operation of a vehicle in a manner which is simple negligence.*

(2) *"Simple negligence" as used in this section:*

(a) A person acts with simple negligence with respect to his conduct when he should be aware of a risk that he engages in such conduct.

---

[2] In 1986, the legislature amended HRS § 702-206 to read:

(4) "Negligently."

(a) A person acts negligently with respect to his conduct when he should be aware of a substantial and unjustifiable risk taken that the person's conduct is of the specified nature.

HRS § 702-206(4)(a) (Supp. 1986). This change does not affect this case since it was enacted after the negligent homicide occurred. *See* Act 314, § 4, 1986 Haw. Sess. Laws 593, 594-95.

(b) A person acts with simple negligence with respect to attendant circumstances when he should be aware of a risk that such circumstances exist.

(c) A person acts with simple negligence with respect to a result of his conduct when he should be aware of a risk that his conduct will cause such a result.

(d) A risk is within the meaning of this subsection. if the person's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a deviation from the standard of care that a law-abiding person would observe in the same situation.

(3) Negligent homicide in the second degree is a misdemeanor.

Clearly, then, an important distinction exists between "negligence" and "simple negligence" for the purposes of criminal *mens rea*. We go on to describe the reasons for this distinction based on an examination of the germane legislative history.

### B.

### *RELEVANT LEGISLATIVE HISTORY.*

Hawaii's penal statutes have traditionally contained a felony negligent homicide and a misdemeanor negligent homicide. Prior to 1972, the then-existing HRS § 748-9(a) explained the felony crime as involving "gross negligence." HRS § 748-9(b), however, described the misdemeanor offense as a killing caused by "negligence."

In 1972, the legislature enacted HRS § 707-703 (it remains unchanged to this day) wherein "negligence" was substituted for "gross negligence" as the requisite state of mind for felony negligent homicide:

§ *707-703 Negligent homicide in the first degree.* (1) A person is guilty of the offense of negligent homicide in the first degree if he causes the death of another person by the operation of a vehicle in a negligent manner.

(2) Negligent homicide in the first degree is a class C felony.

*See State v. Johnson,* 3 Haw. App. 472, 653 P.2d 428 (1982). By comparison, HRS § 707-704 now employed the "simple negligence" *mens rea.* The law now made a "gross deviation" from prudent conduct (negligence) a felony whereas conduct which merely "deviates" from the law-abiding (simple negligence) a misdemeanor.

Unlike the penal code, HRS chapter 853 was first adopted in 1976. As originally worded, HRS § 853-4(1) prohibited the use of a DAG plea or DANC plea when "[t]he offense charged involves the intentional, knowing, reckless or grossly negligent killing of another person." In 1980, the statute was amended "to correct obsolete wording and expand upon the exclusions from deferred acceptance of guilty pleas (DAG), particularly in view of the proliferation of DAG pleas being granted by judges." Act 292, § 1, 1980 Haw. Sess. Laws 557, 557. Several new offenses were added to the list for which DAG pleas and DANC pleas could not be granted, and "grossly," which had modified "negligent," was stricken from HRS § 853-4(1).

Based on the above legislative history two conflicting views arise. State declares that, by eliminating the term "grossly," the legislature intended to expand the class of offenses for which a DAG plea or DANC plea could not be given to include all negligent killings, including "negligence" and "simple negligence." State additionally reasons that, because "gross negligence" was no longer used to describe the felony offense in 1976 (when HRS chapter 853 was enacted), the 1980 amendment of HRS § 853-4(1) was not only to correct obsolete wording but also to increase the exclusion's scope.

Aton, on the other hand, advances that, if the 1980 amendment was meant to exclude HRS § 707-704, the legislature would have specifically listed the negligence and simple negligence killing, which did not happen. He thus concludes that the term "negligent" in HRS § 853-4 cannot be construed to encompass all negligence and simple negligence killings where "negligence" is defined in HRS § 702-206(4) and "simple negligence" is described in HRS § 707-704(2). Aton characterizes the 1980 amendments as housekeeping to clarify what *mens rea* constituted negligent homicide.

We must now decide which view is correct.

## C.

### *APPLICATION OF THE CONTROLLING STATUTES.*

Based on the statutory language and in light of the pertinent legislative history, *see State v. Tupuola,* 68 Haw. ____, 711 P.2d 1289 (1985), we determine that HRS § 707-704 is not within that group of offenses subject to HRS § 853-4(1). That is, a trial court retains the discretion to grant a DAG plea or a DANC plea for a second-degree negligent homicide.

Had the legislature desired a contrary result, then HRS § 853-4(1) would have been amended in 1980 to have read that "all offenses involving the killing of another person" would have been unavailable for a DAG plea or DANC plea. Because all homicide crimes would have then been excluded, there would have been no need to enumerate the different states of mind. The legislature clearly did not intend this outcome. *See State v. Mehau,* 68 Haw. ____, 711 P.2d 727 (1985).

The statutory language evidences that the legislature did not mean to divest a trial court of the discretion to grant a DAG plea or a DANC plea for violations of HRS § 707-704. This is the most reasonable interpretation. *See State v. Herrera,* 63 Haw. 405, 629 P.2d 626 (1981); *see also State v. Lo,* 66 Haw. 653, 675 P.2d 754 (1983).

State, furthermore, has not demonstrated that the trial court abused its discretion. *Toledo v. Lam,* 67 Haw. 20, 675 P.2d 773 (1984); *see State v. Estrada,* 69 Haw. ____, 738 P.2d 812 (1987). This case is thus not a rare and exceptional instance where the issuance of an extraordinary writ would be appropriate. *Wolfe v. Au,* 67 Haw. 259, 686 P.2d 16 (1984) (per curiam).

## VI.

### *CONCLUSION.*

After a thorough review of the record, we rule that the trial court correctly exercised its discretion and acted within the scope of its power. Hence, a writ of mandamus and/or prohibition will not issue, and this petition is dismissed. *See Iaea v. Heely,* 69 Haw. ____,

743 P.2d 456 (1987).

*Sandra Ann Yee (Arthur E. Ross* on the petition and supplemental memorandum), Deputies of the Prosecuting Attorney, for Petitioner.

*Christopher D. Ferrara (Robinson & Ferrara,* of counsel), for Respondent Aton.