OTAKA, INC., Petitioner, v. THE HONORABLE ROBERT G. KLEIN, EMERALD MANAGEMENT COMPANY, a Hawaii Limited Partnership, and YO TOKUYAMA, as Trustee in Dissolution for EMERALD HOTELS CORPORATION, a dissolved Hawaii corporation, Respondents

NO. 14134

(CIV. NO. 89–2110–07)

MAY 9, 1990

PADGETT, ACTING C.J., HAYASHI, WAKATSUKI, AND MOON, JJ., AND RETIRED JUSTICE NAKAMURA, IN PLACE OF LUM, C.J., RECUSED

**Per Curiam.** The instant petition for writ of mandamus, which seeks to disqualify the firm McCorriston, Miho & Miller (McCorriston) from representing Emerald Management Company and Yo Tokuyama as trustee in dissolution for Emerald Hotels Corporation (Emerald) in Civil No. 89–2110–07, presents this court with the opportunity to determine the legal standards to be applied by our trial courts in attorney disqualification proceedings based on alleged violations of Canon 4[1] of the Code of Professional Responsibility. Recognizing that the increase in attorney mobility among law firms in this jurisdiction will inevitably generate more disqualification actions, we think it prudent to address this matter at this time by exercising our supervisory powers over the first circuit court pursuant to Hawaii Revised Statutes (HRS) § 602–4.[2]

Civil No. 89–2110–07 consists of a seven–count complaint filed by McCorriston on July 12, 1989 on behalf of Emerald "for declaratory judgment, injunctive relief, rescission and other causes of action" against Otaka, Inc. (Otaka) for its cancellation by letter of its Hawaiian Regent Hotel Management Agreement with Emerald and its termination of Emerald "as the manager and operator of the [Hawaiian Regent] Hotel effective . . . on July 16, 1989." By

---

[1] Canon 4 states: "A LAWYER SHOULD PRESERVE THE CONFIDENCES AND SECRETS OF A CLIENT."

[2] HRS § 602–4 reads:

> The supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law.

letter dated July 22, 1989, Otaka's president Steve Kawagishi requested that McCorriston cease representing Emerald because members of the McCorriston firm had "performed legal services for Otaka on matters which are at issue in the present litigation[,]" and "[o]ther partners . . . [had] represented Otaka, Inc. in matters which bear a substantial relation to the matters at issue in this litigation." On July 23, 1989 Otaka retained Paul, Johnson, Alston & Hunt (Paul) to represent it in Civil No. 89–2110–07. On August 1, 1989, Otaka, through Paul, filed a motion to disqualify McCorriston. The motion was heard by Judge Klein on August 17, 1989 and denied by order entered on September 28, 1989. Otaka filed the instant petition on October 18, 1989. On December 6, 1989, this court appointed Ted T. Tsukiyama, Esq., special master

> to review the documents submitted to this court in this proceeding; to receive additional memoranda from the parties as deemed appropriate; to conduct a further hearing or hearings on the subject disqualification issue, during which hearings he may entertain further relevant evidence if he deems it necessary for a fair determination of the issue; and to prepare and submit findings of fact and recommendations to this court.

The special master filed his report on March 9, 1990 and the parties submitted written exceptions to the report on March 19, 1990, with this court's permission.

Otaka alleges that nine attorneys who are presently partners or associates of McCorriston and one attorney who is no longer with the firm provided legal services to Otaka at various times between 1984 and 1988 on matters substantially related to the litigation in Civil No. 89–2110–07. Otaka thus seeks disqualification of McCorriston on the ground that the firm's representation of Emerald violates Canon 4 of the Code of Professional Responsibility.

Upon thorough review of the documents filed in this extraordinary proceeding and the transcripts of the hearings conducted therein, we accept the findings of the special master and conclude

that McCorriston partner Jon T. Miho's dealings with Otaka between 1984 and 1988 alone are sufficient to disqualify Miho and his firm from representing Emerald in Civil No. 89–2110–07. Therefore we need not consider the involvement of the other attorneys identified by Otaka[3] in order to grant the instant petition and direct the first circuit court to enter an appropriate order of disqualification.

I.

In 1984, Otaka embarked on a capital investment program of acquiring hotels and resorts in this State. Between 1984 and 1988, this program resulted in the purchase of the Holiday Inn Waikiki Beach, the Makani Kai Hotel, the Keauhou Golf Course, the Kona Lagoon Hotel, the Kona Surf Hotel, the Hawaiian Regent Hotel, and the Fairway Villa condominium. During the same period, Otaka sought, unsuccessfully, to purchase the Keauhou Beach Hotel and the Hyatt Regency Hotel.

Legal services for these transactions were variously provided by attorneys associated with the following law firms: Carlsmith, Carlsmith, Wichman & Case; Goodsill, Anderson & Quinn; Fong & Miho, subsequently Fong, Miho, Okano & Wong; and Lee, Henderson, Chipchase & Wong. Ten of these attorneys, including Jon T. Miho, subsequently joined the McCorriston law firm. *See supra* note 3.

Miho's involvement with Otaka commenced in January, 1984, when Norman and Rodney Inaba introduced him to Yukio Takahashi, the owner of several Japanese corporations that established Otaka. Miho had been contacted earlier by Waikiki Beach Partners, the owners of Holiday Inn Waikiki Beach, to find a buyer for the hotel. Although Miho was not licensed as a real estate

---

[3] They are: Calvert Chipchase, Patrick Lau, Randy Hew, Michael Tom, Clifford J. Miller, Steven Okano, Eric Kawatani, Clarence Fong, and Keith Suzuka.

broker, he entered into a "handshake partnership" with Rodney Inaba, the broker for Takahashi, to find and sell properties as "co–brokers."

At the outset of the Holiday Inn negotiations, Miho informed Takahashi that he could not serve as Takahashi's attorney because he had been hired by the seller as its broker in the deal. And in May, 1984 Miho declined Otaka's request to act as its counsel in negotiations in San Francisco because of his broker status with Waikiki Beach Partners. Nevertheless, Miho attended Otaka's strategy meetings and was privy to discussions about the conditions of purchase. Miho also represented the interests of Otaka and made recommendations to Otaka and its retained attorney during negotiations held with the mortgagee, the prospective hotel manager, and the lessor of the Holiday Inn Waikiki Beach, after Waikiki Beach Partners and Otaka had reached agreement on the terms of the sale and purchase of the hotel. And although Miho often acted through Jon T. Miho, Inc., his own real estate investment and development company, he sent a memorandum dated March 22, 1984 to Takahashi on Fong & Miho stationery advising him of negotiating problems and offering recommendations.

In November, 1984, Otaka sought Miho's assistance in purchasing the Makani Kai Hotel. Takao Building Development, a Takahashi company, appointed Jon T. Miho, Inc. as its agent in this transaction and Miho personally negotiated the purchase of the hotel. Jon T. Miho, Inc. was paid $75,000 by Otaka "for broker's commission–Makani Kai."

During 1985 and 1986, Miho negotiated the purchase of the Keauhou Golf Course in Kona, Hawaii and closed the deal as attorney for Otaka. Otaka paid to Fong & Miho the sum of $34,031.67, of which $2,500 went to Miho for his legal services. During the same period, Miho and Rodney Inaba acted as brokers for Otaka to effect the purchase of the Keauhou Beach Hotel from Amfac. But the latter deal fell through when Azabu USA out–negotiated Otaka and purchased the hotel, with Miho's assistance.

In August, 1986, immediately after purchasing the Kona Lagoon Hotel, Otaka resold the hotel to Azabu. Miho represented Azabu as broker in this transaction.

Finally, in 1986, Miho was hired by VMS Realty, the owner of the Hyatt Regency Hotel, to find a buyer for the hotel. Miho approached Takahashi as a possible purchaser and attended several negotiation meetings between Otaka and VMS Realty in Chicago and at the Hyatt in Waikiki. During the negotiations, Miho used Fong & Miho stationery to transmit information, advice, and recommendations to Otaka on three occasions. Miho also sent a copy of the Hemmeter Management Agreement at the Hyatt Regency to Otaka, with the advice that the management agreement might be difficult to terminate upon acquisition of the hotel. Otaka subsequently dropped out of the negotiations and Azabu purchased the hotel.

## II.

Canon 4 of the Code of Professional Responsibility presupposes the existence of a prior attorney–client relationship between the challenged attorney and the party who is disputing the attorney's representation of an adversarial party in the current litigation. Thus, before we consider any alleged violation of Canon 4 by Miho, we must first establish that there was a prior attorney–client or other fiduciary relationship between Miho and Otaka. Unless such a relationship existed, Canon 4 could not be triggered and the relief sought by Otaka in the instant petition would not be possible.

Except for the Keauhou Golf Course transaction, there was no formal attorney–client relationship established between Miho and Otaka. But "where . . . there is no express attorney–client relationship, there [may] exist[] nevertheless a fiduciary obligation or an implied professional relation[.]" *Westinghouse Elec. Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978). *See also Trone v. Smith*, 621 F.2d 994, 1002 (9th Cir. 1980).

"A fiduciary relationship may result because of the nature of the work performed and the circumstances under which confidential information is divulged." *Westinghouse*, 580 F.2d at 1320. "Legal consultation occurs when the *client* believes that he is approaching an attorney in a professional capacity with a manifest intent to seek professional legal advice. Thus, the 'deciding factor is what the prospective client thought when he made the disclosure, not what the lawyer thought.'" *Developments in the Law — Conflicts of Interest in the Legal Profession*, 94 Harv. L. Rev. 1244, 1322 (1981) (footnote omitted) (original emphasis) (quoting R. Wise, *Legal Ethics* 75, 284 (Supp. 1979)).

The evidence received by the special master clearly shows that, during the 1984 to 1988 period of Otaka's capital investment program in Hawaii, the principals of Otaka viewed Miho as Otaka's lawyer despite the fact that Miho did not receive attorney's fees from Otaka, except for his services for the purchase of the Keauhou Golf Course, and the fact that Miho informed Otaka that he could not act as its attorney on several occasions.

Former Otaka Vice President Ken Sekitani testified before the special master that Miho was regarded as "Takahashi's closest friend," who gave Otaka general advice on corporate strategy and helped Otaka "as a broker as well as attorney." Sekitani stated that when problems arose, Otaka asked Miho for advice; that he disclosed all of his business strategy to Miho and gave Miho confidential information which he expected Miho, as an attorney, to keep confidential.

Otaka President Kawagishi testified that Miho's involvement in the Holiday Inn Waikiki Beach purchase was such that he considered Miho "a lawyer working on behalf of [Kawagishi] and Takahashi." Since Miho sat in Otaka's strategy meetings and listened to Otaka's discussions on the conditions of purchase, Kawagishi saw Miho as "advising Otaka as a lawyer to be working for Otaka's interest."

Miho's explanation as to why Otaka may have perceived him as its lawyer in the Holiday Inn Waikiki Beach purchase is that he participated in "shuttle diplomacy" on behalf of Otaka after Waikiki Beach Partners and Otaka had reached an agreement concerning the sale and purchase of the hotel. Despite the early agreement between buyer and seller, there were significant problems involving the mortgagee, the lessor, and the prospective hotel manager of the property that had to be resolved. Miho and Inaba flew to Japan and to the U.S. mainland to resolve these problems. Miho testified that he did represent Otaka's interests in these negotiations, but not legally or formally. He contends that he acted as a middleman, and while he did make recommendations to Otaka, that the advice given was business advice rather than legal advice. Miho's middleman activities with respect to the Holiday Inn project included revising and modifying the Holiday Inn License Agreement; drafting, at Kawagishi's request, a response to the mortgagee concerning Otaka's assumption of the mortgagee's loan; writing a memorandum to Takahashi concerning certain attorney problems encountered with the lessor and a meeting with the mortgagee on resolving the mortgage encumbrance; and attending the closing of the purchase in Memphis, Tennessee, in order to perform any necessary revisions or modifications of the final documents.

However Miho describes his activities in the Holiday Inn Waikiki Beach purchase, it is undisputed that he became well–acquainted with Otaka's objectives concerning management of the hotel and disposition of the hotel's existing management agreement, the method of financing the purchase of the hotel, and Otaka's negotiation strategy generally.

With respect to the Makani Kai Hotel project in which Miho was hired as Takahashi's agent to purchase the hotel for a broker's commission of $75,000, Kawagishi testified that "since Mr. Miho helped us in acquiring Holiday Inn Waikiki Beach at that time, any deals coming to us or certain legal matters, we would turn to Mr.

Miho to receive his advice or maybe inform him of what we are doing." Kawagishi's recollection is that he specifically discussed the subjects of the eviction of residents and the management of the hotel with Miho.

Sekitani also testified that he thought Miho acted as both attorney and broker for Otaka in the negotiations to purchase the Hyatt Regency Hotel. Sekitani based his perception of Miho's role as attorney and broker on Miho's participation in the negotiations between Otaka and VMS Realty over the sale price, the terminability of existing hotel management contracts, and the continuing involvement of Hemmeter in certain areas of hotel operation, and on his request that Miho conduct legal research on such issues as the Hyatt's management agreement and tenant problem.

McCorriston contends that Miho's participation in these transactions and negotiations was strictly as a broker, thus Canon 4 could not possibly apply to Miho, to his firm, or to any confidences and information that Miho may have acquired from Otaka in the purchase of the Holiday Inn Waikiki Beach and the Makani Kai Hotel or in the abortive attempts to purchase the Keauhou Beach Hotel and the Hyatt Regency Hotel. But we conclude, from the testimony received by the special master, that Miho's services rendered on behalf of Otaka far exceeded the services of a mere broker for the seller in the Holiday Inn Waikiki Beach and the Hyatt Regency Hotel transactions and the services of a mere broker for the buyer in the Makani Kai Hotel purchase. Many of the services performed can only be characterized as legal in nature. Moreover, Miho himself appears to have contributed to Otaka's belief that he was acting as its attorney, even while he was being paid a broker's fee by another party to the transaction, by his use of his law firm's stationery to provide information and advice to Otaka, his attendance at and participation in Otaka's strategy sessions, and his rendering of a variety of services to Otaka during the negotiations.

The circumstances of Miho's various dealings with Otaka were such as to establish a fiduciary relationship between Miho

and Otaka that required Miho, as an attorney, to preserve whatever confidences and secrets he might have acquired from Otaka in these "former representations."

### III.

"The relevant test for disqualification is whether the former representation is 'substantially related' to the current representation." *Trone v. Smith*, 621 F.2d at 998 (citations omitted). Under the "substantial relationship" test, which derives from *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265 (S.D.N.Y. 1953),

> the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client.

113 F. Supp. at 268. For, it is assumed "that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the [current] representation." *Id.* "The test does not require the former client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure [Canon 4] is intended to protect." *Trone v. Smith*, 621 F.2d at 998–99.

"Substantiality is present if the factual contexts of the [former and present] representations are similar or related." *Id.* at 998. It "is measured by the allegations in the complaint and by the nature of the evidence that would be helpful in establishing those allegations." *Id.* at 1000.

Thus, we examine the allegations in Emerald's complaint against Otaka in Civil No. 89–2110–07 to determine whether the issues raised by the complaint are "similar or related" to those in Miho's "former representations" of Otaka.

Emerald's complaint alleges entitlement to a declaration that Otaka's cancellation of its Hawaiian Regent Hotel Management Agreement with Emerald by letter was not effective to terminate the agreement; entitlement to injunctive relief barring Otaka from terminating the Management Agreement; breach of the Management Agreement by Otaka; breach by Otaka of the Sales Agreement, by which Otaka purchased the Hawaiian Regent Hotel from Emerald; entitlement to rescission of the Sales Agreement; unfair and deceptive trade acts and practices by Otaka; and tortious interference with contractual relations by Otaka.

Although Miho was not involved in the purchase of the Hawaiian Regent Hotel or in any of the subsequent actions for which Otaka required legal services with respect to the hotel, his prior "representations" of Otaka, particularly in the Holiday Inn Waikiki Beach and Hyatt Regency negotiations, definitely are related to his firm's current representation of Emerald. For the "former representations" also concerned hotel management agreements and Otaka's efforts to settle issues relating to existing management agreements and their possible termination prior to the purchase of the hotels by Otaka. Moreover, Miho's active involvement and participation in strategy sessions with Otaka's principals enabled him to acquire confidences and to learn Otaka's management philosophy with respect to the hotels it sought to purchase. And, as noted by the special master, this knowledge "may be material and relevant to the central issue of breach of management agreement" in Emerald's complaint. We therefore conclude that there is a "substantial relationship" between Miho's "former representations" of Otaka and his firm's current representation of Emerald.

## IV.

Having determined that the "substantial relationship" test has been met in this case, we hold that Miho must be disqualified from

representing Emerald in Civil No. 89–2110–07. We further hold that Miho's disqualification must be imputed to his law firm. For we are of the firm belief that "[o]nce the attorney is found to be disqualified [on the basis of prior adverse representation], both the attorney and the attorney's firm [must be] disqualified from suing the former client." *Trone v. Smith*, 621 F.2d at 999.[4]

We therefore grant the instant petition and direct the first circuit court to vacate its order of September 28, 1989 and to enter an appropriate order disqualifying the firm of McCorriston, Miho & Miller from representing Emerald in Civil No. 89–2110–07.

*James T. Paul, William S. Hunt* and *Sheryl L. Nicholson* (Paul, Johnson, Alston & Hunt, of counsel) and *Barry W. Marr* and *Anna M. Elento–Sneed* (Carlsmith, Wichman, Case, Mukai & Ichiki, of counsel) on the petition and exceptions to special master's report for petitioner.

*William C. McCorriston, William Meheula* and *Nadine Y. Ando* (McCorriston, Miho & Miller, of counsel), *Jeffrey M. Smith* (Arnall, Golden, & Gregory, of counsel) and *James J. Bickerton* (Bickerton, Ramos–Saunders & Dang, of counsel) on the answer to petition and exceptions to special master's report for Respondents Emerald Management and Yo Tokuyama.

---

[4] We do not think the "Chinese wall" defense to law firm disqualification is applicable in this case. Therefore, we do not address the argument that imputed disqualification may be rebutted by the erection of "Chinese walls" to screen and isolate the disqualified attorney from other members of the firm.