948 P.2d 1048

STATE of Hawai'i, Plaintiff–Appellee,

v.

Eryck A. BAUTISTA, Defendant–Appellant.

No. 20383.

Supreme Court of Hawai'i.

Nov. 28, 1997.

Jon N. Ikenaga, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Artemio C. Baxa, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

NAKAYAMA, Judge.

Defendant-appellant Eryck A. Bautista appeals from his conviction on one count of theft in the first degree in violation of Hawai'i Revised Statutes § 708–830.5(1) (1993). Because the evidence was insufficient to support a finding that Bautista had the required intent to commit theft in the first degree, we reverse his conviction.

## I. BACKGROUND

On March 25, 1996, Bautista was indicted on one count of theft in the first degree in violation of HRS § 708–830.5(1) (1993). This indictment arose out of Bautista's temporary possession of a new Toyota 4–Runner vehicle.

On Wednesday, July 12, 1995, Bautista went to Maui Toyota and spoke with a salesperson, indicating that he was interested in purchasing a new truck. After taking a test drive, Bautista left the dealership without purchasing a vehicle. Bautista returned to Maui Toyota between 4:00 and 5:00 p.m. on Friday, July 14, 1995. He told the salesperson that he had decided to purchase a new 4–Runner. The 4–Runner that Bautista selected was prepped and ready to be driven off the lot that day. After negotiating the final selling price, Bautista wrote a check to Maui Toyota in the amount of $29,865.83. Maui Toyota did not contact Bautista's bank at

that time to determine if there was adequate money in the account to cover the check. Bautista then took possession of the vehicle.

On Monday, July 17, 1995, Bautista brought the 4–Runner back to Maui Toyota in order to have optional running boards installed. Later that day, Cecilia Morris, Maui Toyota's financing and leasing manager, received a call from Maui Toyota's accounting office notifying her that Bautista's check had not been honored. She notified the salesperson, who then called Bautista, told him that the check had not cleared, and instructed him to bring the vehicle back. Bautista returned the 4–Runner that day. The vehicle had 592 miles on the odometer when it was returned. As a result of the mileage on the vehicle, it could no longer be sold as new. Bautista continued to have contact with Maui Toyota, claiming to be attempting to find a way to get the money to purchase the vehicle. Bautista did not actually apply for another loan, although he told the dealership that he had applied and that his application was denied. On July 26, 1995, Maui Toyota notified the police.

Evidence was presented at trial showing that the account upon which Bautista wrote his check was closed on February 9, 1995, over five months before Bautista wrote the check to Maui Toyota. The highest balance in that account prior to being closed was $200.

At trial, the prosecution produced two witnesses who testified that, subsequent to attempting to purchase the vehicle at Maui Toyota, Bautista went to two other car dealerships and purchased automobiles with checks written on closed accounts, returning the vehicles with large amounts of mileage as soon as it was determined that the checks were invalid.

In all of Bautista's dealings with Maui Toyota, he gave correct information as to his name, phone number and address. At trial, Bautista testified that he was unaware that Maui Toyota was going to cash his check and that he was surprised when they told him that he could take the 4–runner off the lot. Bautista stated that he gave Maui Toyota a deposit of $100 to hold the vehicle until he received financing. He claimed that he had applied for a loan with Norwest Financial, which was pending at the time he took possession of the vehicle. However, testimony from the manager of Norwest Financial revealed that Bautista never formally filed an application for a loan with that company. An investigating police officer testified that Bautista admitted that he knew the checking account was closed when he tendered the check for the vehicle.

Bautista was convicted of theft in the first degree and sentenced to ten years imprisonment. As a repeat offender, he was sentenced to serve a mandatory minimum term of imprisonment of six years and eight months. Bautista timely appealed his conviction.

## II. DISCUSSION

### A. Standard of Review

This case requires interpretation of the Hawai'i Penal Code's theft statute. We review statutes *de novo*. *Shimabuku v. Montgomery Elevator Co.*, 79 Hawai'i 352, 357, 903 P.2d 48, 52 (1995). "The starting point in statutory construction is to determine the legislative intent from the language of the statute itself." *State v. Kaakimaka*, 84 Hawai'i 280, 289, 933 P.2d 617, 626, *reconsideration denied* 84 Hawai'i 496, 936 P.2d 191 (1997). "[O]ur foremost obligation [when interpreting a statute] is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself." *State v. Aluli*, 78 Hawai'i 317, 320, 893 P.2d 168, 171 (1995) (citation omitted). We read statutory language in the context of the entire statute, "and construe it in a manner consistent with its purpose." *Mathewson v. Aloha Airlines, Inc.*, 82 Hawai'i 57, 71, 919 P.2d 969, 983 (1996) (citation and internal quotation marks omitted). "A rational, sensible and practicable interpretation [of a statute] is preferred to one which is unreasonable or impracticable." *State v. Lobendahn*, 71 Haw. 111, 112, 784 P.2d 872, 873 (1989) (citations and internal quotation marks omitted) (brackets in original) "The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality." *State v. Arceo*, 84 Hawai'i 1, 19, 928

P.2d 843, 861 (1996) (citation and internal quotation marks omitted). As a general rule, "[p]enal statutes are to be strictly construed." *State v. Ganal*, 81 Hawai'i 358, 373, 917 P.2d 370, 385 (1996) (citation omitted) (brackets in original). "[A]mbiguous penal statutes are to be construed in favor of the accused." *State v. Aluli*, 78 Hawai'i 317, 321, 893 P.2d 168, 172 (1995) (citing *State v. Rodgers*, 68 Haw. 438, 444, 718 P.2d 275, 278 (1986)).

B. *Insufficient Evidence was Presented to Prove that Bautista Intended to Commit Theft in the First Degree*

HRS § 708–830 (1993) provides that "A person commits theft if the person does any of the following: ... (2) A person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property." HRS § 708–800 (1993) defines "deprive" in pertinent part as "[t]o withhold property or cause it to be withheld from a person permanently or for so extended a period or under such circumstance that a significant portion of its economic value, or of the use and benefit thereof, is lost to the person." HRS § 708–830.5 (1993) provides that "[a] person commits the offense of theft in the first degree if the person commits theft ... [o]f property or services, the value of which exceeds $20,000."

■■■■ Bautista challenges his conviction on the grounds that there was insufficient evidence presented at trial to support a finding that he acted with the intent to deprive Maui Toyota of property valued in excess of $20,000.

> "[V]erdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the jury's findings." *Tsugawa v. Reinartz*, 56 Haw. 67, 71, 527 P.2d 1278, 1282 (1974). We have defined "substantial evidence" as "credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." *See, e.g., In re Doe, Born on January 5, 1976*, 76 Hawai'i 85, 93, 869 P.2d 1304, 1312 (1994) (citations omitted) (brackets in original).

*Aga v. Hundahl*, 78 Hawai'i 230, 237, 891 P.2d 1022, 1029 (1995). "[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the [trier of fact]." *State v. Buch*, 83 Hawai'i 308, 321, 926 P.2d 599, 612 (1996) (citation omitted). "We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction." *State v. Batson*, 73 Haw. 236, 248, 831 P.2d 924, 931 (1992), *reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992) (citations omitted).

The prosecution has the burden to prove every element of the offense beyond a reasonable doubt. HRS § 701–114 (1993). An individual cannot be convicted of a crime unless the state of mind required to establish each element of the offense is proven beyond a reasonable doubt. HRS § 701–114(1)(b) (1993).

The dispositive issue under the unusual facts of this case is whether, viewed in the light most strongly favoring the prosecution, substantial evidence was presented to prove that Bautista intended to deprive Maui Toyota of property valued in excess of $20,000. The prosecution cites the following evidence to support a finding that Bautista intended to commit theft in the first degree: (a) Bautista was familiar with car sales procedures because he had previously worked at a dealership; (b) Bautista knew the difference between new and used car values; (c) Bautista knew that checks took several days to clear; (d) Bautista knew that new cars driven off the lot depreciated in value; (e) Bautista knew that he did not have sufficient funds in his account to cover the check; (f) he never filled out a loan application; and (g) Bautista knew that it was unwise for a car dealership to sell a car solely on the basis of a $100 deposit and an unverified check.

Under the statutory definition of "deprive," the prosecution could meet its burden to prove Bautista's intent to commit theft in the first degree by showing that either (a) Bautista intended to permanently withhold the 4–runner from Maui Toyota; or (b) Bautista intended to withhold the 4–runner for so extended a period, or under such circumstance, that a "significant portion of its eco-

nomic value, or of the use and benefit thereof," was lost to Maui Toyota. HRS § 708–800 (1993).

### 1. Intent to Permanently Deprive

▉ After careful review of the record, we find that substantial evidence was not presented to support a finding that Bautista intended to permanently deprive Maui Toyota of the 4–Runner. Bautista gave Maui Toyota his correct name, phone number and address. He had possession of the vehicle for a period of approximately 72 hours, from Friday afternoon until Monday. When Maui Toyota contacted him to request that he return the vehicle to the dealership, he did so .on that day. Further evidence of his lack of intent to keep the vehicle permanently is demonstrated by the fact that, on two subsequent occasions, he performed the same feat and each time, he returned the vehicle to the dealership.

The evidence cited by the prosecution to support a finding of intent to commit theft in the first degree is not sufficient to uphold Bautista's conviction. The evidence adduced at trial leads us to the opposite conclusion than that urged by the prosecution. The evidence indicates that Bautista intended the actual result in this case, i.e. that he would have a new vehicle to drive for the weekend and then return it when his deception was uncovered. The fact that Bautista drove the vehicle more than 500 miles over the course of the weekend further supports the conclusion that he wanted to enjoy the vehicle to the maximum extent in the short time in which he had possession of it. There is no substantial evidence that Bautista intended to permanently deprive Maui Toyota of the vehicle.

### 2. Intent to Withhold Significant Portion of Economic Value, Use or Benefit

The second definition of "deprive" has never been addressed by the Hawai'i appellate courts. The definition of "deprive" in HRS § 708–800 is essentially identical to that of the Model Penal Code,[1] enacted in Hawai'i in 1972 and not changed substantially since that date.[2]

The prosecution demonstrated that used cars are generally worth less than new cars. The prosecution presented evidence that a car with more than 500 miles on the odometer is considered a used car. However, in relation to the 4–Runner taken by Bautista, which was used for three days and then returned, the prosecution was unable to demonstrate any actual loss to Maui Toyota. Ms. Morris, the finance manager for Maui Toyota, testified that:

Q [Defense Counsel]: Can—or could Maui Toyota determine the loss suffered once the car has become used? . . .

A [Ms. Morris]: In some cases, yes.

Q: In a case such as this, would they be able to do such?

A: No.

Q: What would be the problems?

A: The person who purchased the vehicle after had other things done to the deal. There was a trade involved in their deal. And depending on how much we sold that trade for, what we took the trade-in for,

---

1. The pertinent section of the Model Penal Code defines "deprive" as "to withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value." 2 A.L.I. MODEL PENAL CODE VOLUME 2 § 223.0. The legislative history on the adoption of the Hawai'i Penal Code states that: "The purpose of this bill is to effect the first complete reorganization of the criminal law of the State of [Hawai'i] . . . The bill, . . . a derivative of the Model Penal Code as recommended by the American Law Institute, is designed to update the criminal law." Sen. Conf. Comm. Rep. No. 1–72, in 1972 Senate Journal, at 734. The legislative history of the Hawai'i Penal Code does

not reference the decision to substitute "significant" for "major." In our view, this substitution does not reflect a material legislative decision to change the effect of the Model Penal Code provision.

2. As originally adopted, the section stated that " 'Deprive' means: (a) to withhold property or cause it to be withheld from a person permanently or for so extended a period or under such circumstance that a significant portion of its economic value, or of the use and benefit thereof, is lost to him." 1972 Haw. Sess. L. Act 9, § 1 at 93. This section was later amended to its current, gender-neutral form.

also the preparation of the vehicle all over again.

Q: The actual loss suffered by Maui Toyota, that can't be determined in this particular case?

A: No.

Taking into consideration the evidence presented that: (1) Bautista intended to return the vehicle in a short period of time; (2) he was familiar with the operation of car dealerships; and (3) Maui Toyota was unable to demonstrate any economic loss, we must determine whether the evidence presented at trial was sufficient to support a finding that Bautista intended to deprive Maui Toyota of a significant portion of the vehicle's economic value, use, or benefit.

■■■ The language of the statute does not give any guidance to aid our interpretation of what constitutes a "significant portion" of the economic value, use, or benefit. This statutory phrase is ambiguous as written. "[A] statute is ambiguous if it capable of being understood by reasonably well-informed people in two or more different senses." *State v. Toyomura*, 80 Hawai'i 8, 904 P.2d 893, 904 (1995) (citing 2A N. Singer, *Sutherland Statutory Construction* § 45.02 at 6 (5th ed.1992)) (internal quotation marks omitted). We must therefore look beyond the language of this provision in order to determine what interpretation will meet the legislative intent. *State v. Mundell*, 8 Haw. App. 610, 616, 822 P.2d 23, 27 (citing *Crawford v. Financial Plaza Contractors*, 64 Haw. 415, 643 P.2d 48 (1982)), *cert. denied*, 72 Haw. 619, 841 P.2d 1075 (1991).

At common law, a larceny conviction required an intent to permanently deprive another of property. *See* 3 Torcia, WHARTON'S CRIMINAL LAW § 351 (15th ed. 1995) ("There is no larceny where the defendant, by actual or constructive trespass, takes the property of another with the intent to use it temporarily and thereafter to return it to the owner."). Modern theft statutes have relaxed the common law's strict requirement that the intent to deprive be permanent.

The commentary to the Model Penal Code, upon which the Hawai'i statute is based, states that:

> Subsection (1) requires for theft of movable property that the actor have a purpose to "deprive" another of an interest in the property.... Although the common-law definition of larceny was often formulated in terms of an intent to deprive permanently, convictions were sustained upon evidence that fell considerably short of proving a purpose totally and finally to deprive another of his property. Thus, it was held that a jury might find an intent permanently to deprive on the basis of evidence that the offender took the property for temporary use without intending to return it and abandoned it under circumstances that amounted to a "reckless exposure to loss." ... Also covered is the case where the actor intends to return the property without exposing it to risk of loss in the meantime but also intends to withhold it "for so extended a period as to appropriate a major portion of its economic value." For example, a person would be guilty of theft under Subsection (1) if he surreptitiously "borrows" his neighbor's lawn mower for the summer, intending to return it in the fall when it would no longer be needed or useful. It would likewise be theft to take tires, a battery, radioactive substances, or other similar goods with a limited useful life, even though the actor intended to return the item taken after a prolonged use that substantially dissipated its value to the owner. On the other hand, unauthorized borrowing or use of personal property is excluded from the offense where the period is not so extended as to appropriate a major portion of its economic value or in a case where the use or disposition of the property does not make it unlikely that the owner will recover its beneficial use.

2 A.L.I. MODEL PENAL CODE VOLUME 2 (1980).

It would be an absurd result to impose the same penalty upon Bautista, who returned an almost new, resalable vehicle three days af-

ter taking possession of it by deception, as that which would be imposed upon an individual who took this vehicle with the intent to retain it permanently.

We note that the legislature has enacted HRS §§ 708–836 and 708–837, which criminalize temporary deprivations of vehicles without regard to whether the owner was deprived of economic value, use, or benefit. Although neither of these statutes would apply to Bautista's behavior, they reinforce the legislative intent to distinguish between theft and lesser deprivations.

HRS § 708–836 (1993) provides in relevant part that "[a] person commits the offense of unauthorized control of a propelled vehicle if the person intentionally exerts unauthorized control over another's propelled vehicle by operating the vehicle without the owner's consent.... Unauthorized control of a propelled vehicle is a class C felony." Because Bautista had the consent of Maui Toyota to operate the vehicle, his behavior did not violate this statute. The commentary to this section states that

> [t]his section is intended to deal with the special case of "joy riding," where the vehicle is returned in undamaged condition, and the temporary borrowing is just for the pleasure (or convenience) of operating the vehicle.... The prevalence of "joy riding" predominantly relates to motor-propelled vehicles, and the Code limits this special offense of misappropriation to such property. The misdemeanor[3] sanction is felt too severe to apply to other forms of unauthorized use of personal property.

Commentary to HRS § 708–836 (1993). If Bautista had taken the vehicle without Maui Toyota's consent, kept it temporarily, and returned it undamaged, he would have been chargeable with unauthorized control of a propelled vehicle, a class C felony. To impose a stiffer penalty by convicting Bautista of theft in the first degree, a class B felony, because he had consent to take the vehicle is illogical.

HRS § 708–837 (1993) provides in relevant part:

> A person commits the offense of failure to return a rental motor vehicle when he intentionally does not return the motor vehicle to the person, or his agent, from whom the vehicle was rented within forty-eight hours after the time stated on the rental agreement.... Failure to return a rental motor vehicle is a misdemeanor.

The commentary to this section states that "[p]resently, there is no legal means available to compel a person to return the vehicle when it is overdue." This recognizes that the statutory definition of theft does not apply when the intent is temporarily to delay the return of a rental vehicle.

The application of the theft statute to Bautista's actions would make these two additional statutory sections superfluous, because they would cover identical situations— temporary possession followed by return of an undamaged vehicle. "It is a cardinal rule of statutory construction that courts are bound to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous." *State v. Ganal,* 81 Hawai'i 358, 372, 917 P.2d 370, 384 (1996).

The only cases known to this court that interpret language similar to the second definition of "deprive" are from Alaska. *See, e.g., Champion v. State,* 908 P.2d 454 (Alaska App.1995); *Glidden v. State,* 842 P.2d 604 (Alaska App.1992); *Hugo v. City of Fairbanks,* 658 P.2d 155 (Alaska App.1983). The Alaska penal code definition of deprive is "to withhold property of another or cause property of another to be withheld from that person permanently or for so extended a period or under such circumstance that the major portion of its economic value or benefit is lost to that person." Alaska Rev. Stat. § 11.46.990(8)(A) (West 1996). The Alaska courts have interpreted this language to require "a purpose on the part of the defendant to exert permanent or virtually permanent control over the property, or to cause permanent or virtually permanent loss to the owner

---

3. Unauthorized control of a propelled vehicle was originally a misdemeanor. The legislature

subsequently raised the penalty to a class C felony. 1974 Haw. Sess. L. Act 38, § 1 at 68.

of the possession or use of the property." *Glidden*, 842 P.2d at 608 (citation and internal emphasis omitted). "[A] person who temporarily dispossesses an owner of property but returns it with little or *no diminution in its market value does not 'deprive' the owner of 'the major portion of the economic value' of that property." *Id.* at 609.

■ We do not adopt Alaska's interpretation of the statute. There may be situations where a deprivation is of such extended duration that, although not resulting in "virtually permanent loss," it nevertheless entails theft within the Hawai'i statutory scheme. However, Bautista's behavior was insufficient in the instant case to support a finding that he had the intent to deprive Maui Toyota of a significant portion of the vehicle's economic value, use, or benefit. Bautista returned the vehicle after temporary possession, and the prosecution was unable to prove any economic loss to Maui Toyota.

For the above reasons, we hold that insufficient evidence was presented at trial to *uphold* a finding that Bautista intended to commit theft in the first degree. Although Bautista's conduct was appalling, it does not support a conviction of theft of the vehicle.[4]

## III. *CONCLUSION*

For the foregoing reasons, we reverse Bautista's conviction of theft in the first degree.

---

4. Bautista's conduct was potentially violative of other portions of the Hawai'i Penal Code. *See, e.g.* HRS § 708–857 (1993) which defines the criminal offense of negotiating a worthless negotiable instrument. However, Bautista was not charged with this misdemeanor offense.