70 P.3d 635

STATE of Hawai'i, Petitioner,

v.

The Honorable Karl K. SAKAMOTO, Judge, Circuit Court of the First Circuit, State of Hawai'i, Respondent,

and

Shawn Reilly, Real Party in Interest, Defendant–Respondent.

No. 25321.

Supreme Court of Hawai'i.

May 30, 2003.

As Corrected June 4, 2003.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, on the briefs, for petitioner.

Linda C.R. Jameson, Deputy Public Defender, on the briefs, for defendant-appellee in opposition.

LEVINSON, J., and Circuit Judge NAKAMURA, assigned by reason of vacancy, and ACOBA, J., concurring separately, and MOON, C.J., dissenting, with whom NAKAYAMA, J., joins.

Opinion by LEVINSON, J., with whom Circuit Judge NAKAMURA joins, announcing the judgment of the Court.

In this original proceeding, the petitioner State of Hawai'i (the prosecution) petitions this court to issue a writ directing the respondent Judge Karl K. Sakamoto (the respondent judge), Judge of the Circuit Court of the First Circuit, to vacate his order granting the defendant-respondent Shawn Reilly's motion for deferred acceptance of no contest (DANC) plea in *State v. Reilly*, Cr. No. 01–1–0062. The prosecution contends that the respondent judge exceeded his lawful authority and contravened the plain language of Hawai'i Revised Statutes (HRS) § 853–4(2) (Supp.2002).

Based upon the following, we hold that the respondent judge did not exceed his legal authority when he granted Reilly's motion for a DANC plea. Accordingly, the prosecution's petition for a writ directed to a judge is denied.

## I. *BACKGROUND*

On May 31, 2000, Reilly argued with Scott Brannan and punched him in the nose, causing a laceration and bone fracture. At first, Brannan informed the police that he did not wish to pursue any charges against Reilly. He later changed his mind, and, on January 10, 2001, the prosecution obtained a grand jury indictment against Reilly charging the offense of assault in the second degree. The indictment alleged:

> On or about the 31st day of May, 2000, in the City and County of Honolulu, State of Hawai'i, SHAWN REILLY did intentionally or knowingly cause substantial bodily injury to Scott Brannan, thereby committing the offense of Assault in the Second Degree, in violation of Section 707–711(1)(a) of the Hawai'i Revised Statutes.

On March 4, 2002, Reilly entered a no contest plea to the charge and moved the respondent judge for a DANC plea. In the course of a hearing conducted on May 14, 2002, the prosecution conceded that Reilly had no prior criminal convictions, but argued that the offense was "serious," being a class C felony, and that, in the interest of justice, deferral of the plea was not warranted. On the same day, the respondent judge entered an order granting the deferred acceptance, having earlier expressed his reasons from the bench as follows:

> Mr. Reilly, you do have a solid background of education and employment pursuits. You're doing real well at Digital Island. I guess you're contemplating going back to school for further education.
>
> . . . .

The court has had pretrial discussions about this case and has reviewed the records and also understands that you had another position about what occurred that day. At least at some point the complaining witness was going to drop these charges. There was a disagreement with that [complaining witness, who] filed suit in a civil case.

The court will find that the ends of justice and welfare of society [do] not demand a current imposition of penalties against you and will grant your motion for deferred acceptance of this case.

The period of the deferral will be for two years.

I'll shorten it because you certainly have a strong future ahead of you and I'm sure with your intelligence will learn from this incident and not be here again in the future.

On June 6, 2002, the prosecution filed a motion for reconsideration of the respondent judge's May 14, 2002 order, arguing that HRS § 853–4 (Supp.2002) did not allow the court to grant a DANC plea in connection with the offense of assault in the second degree. The prosecution acknowledged that, on its face, HRS § 853–4 did not appear to prohibit Reilly's DANC plea. The prosecution argued, however, that allowing the plea would lead to an absurd result because, according to the prosecution, the legislative history reflected that the legislature had intended to render DANC pleas unavailable in cases involving assaults that inflicted substantial bodily injury, inasmuch as assaults, both felony and misdemeanor, that inflicted bodily injury and *serious* bodily injury were expressly excluded by statute.[1]

---

1. The legislative history of HRS § 853–4 reveals the following. HRS § 853–4 was enacted in 1976 and included eight paragraphs that set forth offenses and circumstances that rendered the deferral statute inapplicable, including "when the offense charged involved the cruel or reckless bodily injury of another person. 1976 Haw. Sess. L. Act 154, § 4 at 281. At the time, the Hawai'i Penal Code contained definitions of "serious bodily injury" and "bodily injury," but did not include a definition of "substantial bodily injury" until 1986.

    In 1980, the legislature amended HRS § 853–4 by adding five more subparts (the thirteenth paragraph containing twelve subparts), which delineated additional offenses and circumstances that rendered a deferral inapplicable. The legislature further amended HRS § 853–4(2) to provide that the chapter was inapplicable when "[t]he offense charged involves the intentional, knowing, or reckless bodily injury or serious bodily injury of another person[.]" 1980 Haw. Sess. L. Act 292, § 2 at 558.

    In 1993, the legislature amended HRS § 853–4 again by adding three additional subparts to paragraph 13 and by again amending HRS § 853–4(2) to read as follows (the new statutory material is underlined):

> (2) The offense charged *is a felony which* involves the intentional, knowing, or

Reilly argued in opposition that the language of HRS § 853–4 is plain on its face, providing that deferrals shall not be granted with respect to offenses involving intentional, knowing, or reckless "bodily injury" and "serious bodily injury" of another person. Accordingly, Reilly maintained that the statute does not prohibit deferrals with respect to offenses involving "substantial bodily injury." Reilly therefore contended that he was eligible for a DANC plea and that the court had not erred by granting his motion for a deferral.

The respondent judge denied the prosecution's motion for reconsideration, stating as follows:

> The language [of HRS § 853–4] is very clear in what it seeks to exclude, and there were other opportunities for the legislature to exclude even more, and they have, except they have not excluded on this charge, a substantial bodily injury. So based on that, the motion for reconsideration is denied.

On July 12, 2002, the prosecution filed a second motion for reconsideration on grounds that are not material to the present petition. The respondent judge denied the prosecution's second motion.

The prosecution subsequently filed the present petition, requesting that this court issue a writ directing that the respondent judge vacate the order granting Reilly's motion for a DANC plea. The petition resurrects only the issues raised in the prosecution's first motion for reconsideration.

## II. *STANDARD FOR DISPOSITION*

■ A writ of mandamus is an extraordinary remedy that will not issue unless the petitioner demonstrates a clear and indisputable right to relief and a lack of alternative means to redress the alleged wrong or obtain the requested action. *State v. Hamili,* 87

Hawai'i 102, 104, 952 P.2d 390, 392 (1998) (citing *Straub Clinic & Hospital v. Kochi,* 81 Hawai'i 410, 414, 917 P.2d 1284, 1288 (1996)). Such writs are not meant to supersede the legal discretionary authority of the lower court, nor are they meant to serve as legal remedies in lieu of normal appellate procedures. *Id.* Where the lower court has discretion to act, mandamus will not lie to control the exercise of that discretion, even when the court has acted erroneously, unless the judge has exceeded his or her jurisdiction, has committed a flagrant and manifest abuse of discretion, or has refused to act on a matter that is properly before the court under circumstances in which it has a legal duty to act. *Id.* In *State v. Oshiro,* 69 Haw. 438, 746 P.2d 568 (1987), this court held that HRS § 641–13 does not permit the prosecution to appeal the grant of a deferred acceptance of guilty (DAG) or a DANC plea. Because there is no statutory basis upon which the prosecution can appeal such pleas, a petition for a writ of mandamus or a writ of prohibition, pursuant to HRS § 602–5(4), is the appropriate method for the prosecution to seek review of a DANC plea when it believes that the trial court has acted without statutory authority to accept such a plea. *Oshiro,* 69 Haw. at 443, 746 P.2d at 571; *Hamili,* 87 Hawai'i at 104, 952 P.2d at 392. *See also State v. Dannenberg,* 74 Haw. 75, 837 P.2d 776 (1992).

## III. *DISCUSSION*

■ The sole issue in this proceeding is whether the charged offense with respect to which Reilly entered a no contest plea is excluded from the possibility of deferral by virtue of the provisions of HRS chapter 853 (Supp.2002). When construing a statute, the court's foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. *City*

---

reckless bodily injury or serious bodily injury of another person, *or is a misdemeanor or petty misdemeanor which carries a mandatory minimum sentence and which involves the intentional, knowing, or reckless bodily injury or serious bodily injury of another person* [.]

1993 Haw. Sess. L. Act 234, § 1 at 414.

At no time did the legislature expressly amend HRS § 853–4(2) to exclude offenses involving "*substantial* bodily injury" from the deferral provision. By the same token, the legislature has amended paragraph 13 and added additional subparts in 1996, 1997, 1998, and 2000, augmenting the list of offenses that are excluded from the application of HRS chapter 853.

*and County of Honolulu v. Ing*, 100 Hawai'i 182, 189, 58 P.3d 1229, 1236 (2002); *State v. Kamal*, 88 Hawai'i 292, 294, 966 P.2d 604, 606 (1998) (citations omitted). Where the statutory language is unambiguous, the court's sole duty is to give effect to its plain and obvious meaning. *State v. Harada*, 98 Hawai'i 18, 41, 41 P.3d 174, 197 (2002); *State v. Kalama*, 94 Hawai'i 60, 64, 8 P.3d 1224, 1228 (2000) (citations omitted).

HRS chapter 853 governs the circumstances under which a court may defer final adjudication of a criminal case when (1) a defendant voluntarily pleads guilty or no contest prior to the commencement of trial and (2) the court concludes (a) that the defendant is not likely to engage in a criminal course of conduct and (b) that the ends of justice and welfare of society do not require that the defendant presently suffer the penalty imposed by law. HRS § 853–1(a) (Supp.2002). Such deferrals are constrained by HRS § 853–4, which sets out the circumstances under which chapter 853 "shall not apply." HRS § 853–4(2) provides:

> **Chapter not applicable; when.** This chapter shall not apply when:
>
> . . . .
>
> (2) The offense charged is a felony that involves the intentional, knowing, or reckless *bodily injury* or *serious bodily injury* of another person, or is a misdemeanor or petty misdemeanor that carries a mandatory minimum sentence and that involves the intentional, knowing, or reckless *bodily injury* or *serious bodily injury* of another person.

(emphasis added). HRS § 707–700 (1993) defines three types of bodily injury. "Bodily injury" means physical pain, illness, or any impairment of physical condition. "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. "Substantial bodily injury" means bodily injury that causes: (1) a major avulsion, laceration, or penetration of the skin; (2) a chemical, electrical, friction, or

scalding burn of second degree severity; (3) a bone fracture; (4) a serious concussion; or (5) a tearing, rupture, or corrosive damage to the esophagus, viscera, or other internal organ. Although the Hawai'i Penal Code (HPC) defines the foregoing three types of bodily injury, HRS § 853–4(2) excludes only offenses entailing "serious bodily injury" and "bodily injury" from potential access to deferred acceptance of DAG or DANC pleas.

In its first motion for reconsideration filed in the circuit court, the prosecution conceded that HRS § 853–4(2) did not expressly foreclose the offense to which Reilly tendered his no contest plea from the possibility of deferral. Rather, the prosecution argued that the statute was ambiguous and that a literal construction would produce an absurd result. Consequently, the prosecution invited the circuit court to consider the legislative history underlying the statute to determine the legislature's intent in enacting it.

In the present original proceeding, the prosecution no longer contends that the statute is ambiguous. Rather, the prosecution urges that the language of the statute is clear and excludes offenses that involve the intentional or knowing infliction of "bodily injury" of any kind. Because the term "bodily injury" is subsumed within "substantial bodily injury," the prosecution submits that the offense of assault in the second degree, which involves the infliction of "substantial bodily injury," necessarily encompasses the intentional or knowing causation of "bodily injury." Consequently, the prosecution contends that a deferred plea is not available with respect to the offense to which Reilly tendered a no contest plea.

The prosecution's interpretation, which the dissent has substantially adopted, would be viable if the HPC did not define three distinct forms of bodily injury and HRS § 853–4(2) simply provided that deferrals were unavailable in all felony cases entailing the intentional, knowing, or reckless infliction of bodily injury of any kind. The HPC, however, describes three forms of bodily injury, and HRS § 853–4(2) forecloses only two from the possibility of deferral.[2] Thus, the re-

**2.** The dissent adopts the prosecution's position,

as described above, thereby overlooking the "car-

spondent judge correctly ruled that the plain and unambiguous language of the statute does not exclude the offense at issue in this case.[3] *Cf. Oshiro*, 69 Haw. at 440, 443–48, 746 P.2d at 569, 571–74 ("After he was charged with second-degree negligent homicide, [the defendant] moved for the granting of a DANC plea. [The prosecution] opposed[,] arguing that the legislature[, pursuant to HRS § 853–4(1),] intended to preclude the use of DANC pleas in all cases of 'negligent' killings. [The defendant] responded that HRS § 707–704 involves 'simple negligence,' [as defined by HRS § 707–704(2),] which is distinguishable from 'negligence,' and is thus not within the class of offenses for which DANC pleas may not be given. The trial court, agreeing with [the defendant's] position, granted the DANC plea. [The prosecution] then petitioned this court for a writ of mandamus.... Based on the statutory language and in light of the pertinent legislative history, we determine that HRS § 707–704 [*i.e.*, second-degree negligent homicide] is not within the group of offenses subject to HRS § 853–4(1). That is, a trial court retains the discretion to grant a DAG plea or a DANC plea for a second-degree negligent homicide. Had the legislature desired a contrary result, then HRS § 853–4(1) would have been amended in 1980 to have read that 'all offenses involving the killing of another person' would have been unavailable for a DAG plea of DANC plea. Because all homicide crimes would have been excluded, there would have been no need to enumerate the different states of mind. The legislature clearly did not intend this outcome. The statutory language evidences that the legislature did not mean to divest a trial court of the discretion to grant a DAG plea or a DANC plea for violations of HRS § 707–704. This is the most reasonable interpretation." (Citations omitted.)).

Next, the prosecution contends that the literal construction applied by the respondent judge would lead to an absurd result where one defendant could not move for a deferral after entering a plea to a charged felony assault in which he inflicted mere bodily injury, whereas another defendant who inflicted *substantial* bodily injury could. Because, as the prosecution concedes, the statute is clear and unambiguous, we are bound by its plain and unambiguous language. As we explained in *State v. Dudoit*, 90 Hawai'i 262, 978 P.2d 700 (1999):

> We cannot change the language of the statute, supply a want, or enlarge upon it in order to make it suit a certain state of facts. We do not legislate or make laws. Even when the court is convinced in its own mind that the Legislature really meant and intended something not expressed by the phraseology of the Act, it has no authority to depart from the plain meaning of the language used.

*Id.* at 271, 978 P.2d at 709 (quoting *State v. Meyer*, 61 Haw. 74, 77–78, 595 P.2d 288, 291 (1979)). *See also* HRS § 1–15(3) (1993) (providing that "[e]very construction which leads to an absurdity shall be rejected" *"[w]here the words of a law are ambiguous"*) (emphasis added).[4]

---

dinal rule of statutory construction that courts are bound to give effect to all parts of a statute and that no clause, sentence, or word shall be construed as superfluous, void or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." *State v. Ortiz*, 74 Haw. 343, 351–52, 845 P.2d 547, 551–52 (1993) (citations omitted); *see also State v. Cummings*, 101 Hawai'i 139, 144–45 n. 4, 63 P.3d 1109, 1114–15 n. 4 (2003); *Coon v. City and County of Honolulu*, 98 Hawai'i 233, 259, 47 P.3d 348, 374 (2002). The dissent's position renders the phrase "serious bodily injury", as it appears in HRS § 853–4(2), superfluous.

3. Even if the statute were ambiguous, we have recognized that
"[a]mbiguity concerning the ambit of criminal statutes should be resolved in favor of

lenity." [*Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 64 L.Ed.2d 381 ... (1980).] "This policy of lenity means that the [c]ourt will not interpret a [state] criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended." *Simpson v. United States*, 435 U.S. 6, .15 [98 S.Ct. 909, 55 L.Ed.2d 70] ... (1978). *State v. Soto*, 84 Hawai'i 229, 248–49, 933 P.2d 66, 85–86 (1997) (quoting *State v. Kaakimaka*, 84 Hawai'i 280, 292, 933 P.2d 617, 629 (1997) (some brackets added and some in original)). *State v. Cabrera*, 90 Hawai'i 359, 369, 978 P.2d 797, 807 (1999).

4. The dissent agrees with the prosecution's contention that the respondent judge's ruling leads

Finally, it is important to note that the legislature has had ample and numerous opportunities to amend the DAG/DANC statute to exclude felony offenses that cause "substantial bodily injury" from the possibility of deferral, but has failed to do so. If the prosecution believes that the legislature has overlooked the inclusion of offenses entailing the infliction of the intermediate level of bodily injury, it should address its concerns to that body. In the instant case, the plain and unambiguous language of HRS § 853–4(2) does not prohibit the grant of a DANC plea under the circumstances of this case. Thus, the respondent judge did not exceed his legal authority in doing so.[5]

to an absurd result and that the legislature could not have intended such an anomaly. Review of the second degree assault statute in its entirety, however, supports the conclusion that the construction applied by the respondent judge does not lead to an absurd result. Chapter 853 precludes deferrals with respect to the following subsections of HRS § 707–711(1), which provide that a person commits the offense of assault in the second degree if:

  (b) The person recklessly causes *serious bodily injury* to another person;

  (c) The person intentionally or knowingly causes *bodily injury* to a correctional worker, as defined in section 710–1031(2), who is engaged in the performance of duty or who is within a correctional facility;

  (d) The person intentionally or knowingly causes *bodily injury* to another person with a dangerous instrument; or

  (e) The person intentionally or knowingly causes *bodily injury* to an educational worker who is engaged in the performance of duty or who is within an educational facility....

(emphases added).

All of the instances in which bodily injury, as opposed to substantial bodily injury, results in a felony charge involve either assaults against a particular status of victim, *i.e.*, a correctional or educational worker, or the use of a dangerous instrument. To exclude felony assaults against a particular class of victims or committed with the use of a dangerous instrument from the deferral statute and not exclude the type of charged assault to which Reilly tendered a no contest plea is by no means absurd.

5. Justice Acoba believes that, "[i]nasmuch as the legislature has not prohibited a DANC plea with respect to assault in the second degree[, in violation of HRS] § 707–711(1)(a) (1993), it was within the inherent power of the ... circuit court ... to grant or to deny [Reilly's] motion ... for a DANC plea." Concurring opinion at 415, 70 P.3d at 641. We disagree. The realm of deferred acceptance of DAG and DANC pleas, once the foundling of the judiciary, has evolved into the legislature's foster child. Indeed, Justice Acoba's analysis blurs the distinction between statutorily conferred discretion, on the one hand, and the exercise of inherent judicial power, on the other.

A Deferred Acceptance of Plea Program was created in the district courts in 1971. *State v.* *Martin*, 56 Haw. 292, 294 n. 2, 535 P.2d 127, 128 n. 2 (1975). "A similar DAG Program [was] also ... instituted in the circuit court." *Id.* At the time,

[i]nherent in the court's power in the disposition of a matter properly before [it was] the power to grant or deny, where applicable, a motion for DAG plea. While *this practice [was] not expressly incorporated in any statutory provision*, such power [was] necessarily implicit in the proper and orderly administration of justice.

*Id.* at 294, 535 P.2d at 128 (emphasis added) (footnote omitted).

Effective May 27, 1976, the legislature enacted HRS ch. 853, which codified a mechanism for the deferred acceptance of guilty pleas, although the statute was silent with respect to pleas of nolo contendere or no contest. 1976 Haw. Sess. L. Act 154, §§ 1 through 3 at 279–81. Accordingly, the courts retained the inherent power to allow the deferred acceptance of no contest pleas. *State v. Brown*, 1 Haw.App. 602, 604, 623 P.2d 892, 893 (1981) ("Chapter 853 does not mention DANC pleas. It only refers to DAG pleas. It is a settled rule of statutory interpretation that the legislature, in the enactment of a statute, will not be presumed to intend to overturn long established legal principles, unless such intention is made clearly to appear by express declaration or by necessary implication.... We think the rule applies as much to inherent powers as it does to 'long established legal principles.' Therefore, we hold that chapter 853 did not take away the trial court's inherent power to grant or deny DANC pleas." (Citations and some internal quotation signals omitted.)). "By necessary implication," HRS ch. 853 coopted the field previously occupied by inherent judicial power with respect to granting and denying DAG pleas.

Effective June 14, 1983, the legislature amended HRS ch. 853 to extend to the grant and denial of DANC pleas, *see* 1983 Haw. Sess. L. Act 290, §§ 1 through 6 at 617–18, thereby legislatively overruling *State v. Keahi*, 66 Haw. 364, 365, 662 P.2d 212, 213 (1983) (holding that "the trial court had inherent power to grant or deny acceptance of a deferred acceptance of *nolo contendere* plea"), on which Justice Acoba relies, *see* concurring opinion at 415, 70 P.3d at 641. Never again would the appellate courts of this state invoke the construct of "inherent powers" in the context of the deferral of guilty and no contest pleas;

## IV. *CONCLUSION*

In consideration of the foregoing, the petition for a writ directed to a judge is denied.

### Concurring Opinion by ACOBA, J.

I concur in the result reached because, in the absence of the legislature's prohibition of a deferred acceptance of guilty (DAG) or deferred acceptance of no contest (DANC) plea for a particular offense, a trial court has the inherent power to grant or deny a DAG or DANC plea. Inasmuch as the legislature has not prohibited a DANC plea with respect to assault in the second degree, Hawai'i Revised Statutes (HRS) § 707–711(1)(a) (1993),[1] it was within the inherent power of the first circuit court (the court) to grant or to deny the motion of Defendant–Respondent Shawn Reilly (Defendant) for a DANC plea.

In this case, it is aptly noted that the Hawai'i Penal Code defines three types of bodily injury in HRS § 707–700 (1993 & Supp.2002).[2] HRS § 853–4(2) (Supp.2002) specifically prohibits the court from granting a deferred plea when "bodily injury" or "serious bodily injury" results from an assault. However, HRS § 853–4(2) is silent as to an assault involving "substantial bodily injury." In such a case, I conclude that the trial court's inherent power to grant or deny a motion for DAG plea or DANC plea is applicable as to HRS § 853–4(2). *See State v. Keahi,* 66 Haw. 364, 365, 662 P.2d 212, 213 (1983) (holding that "the trial court had inherent power to grant or deny acceptance of a deferred acceptance of *nolo contendere* plea"); *State v. Buchanan,* 59 Haw. 562, 584 P.2d 126 (1978); *State v. Gumienny,* 58 Haw. 304, 568 P.2d 1194 (1977); *State v. Martin,* 56 Haw. 292, 294, 535 P.2d 127, 128 (1975); *State v. Brown,* 1 Haw.App. 602, 603, 623 P.2d 892, 893 (1981) ("The trial court's power to grant or deny a motion for [DAG] plea is an inherent power.").

"We have previously recognized that 'courts have inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them.'" *State v. Harrison,* 95 Hawai'i 28, 32, 18 P.3d 890, 894 (2001) (quoting *Kawamata Farms, Inc. v. United Agri Prods.,* 86 Hawai'i 214, 242, 948 P.2d 1055, 1083 (1997) (quoting *Richardson v. Sport Shinko (Waikiki Corp.),* 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994))).[3] In that regard, in *Martin,* the first case to consider the power of a court to grant a DAG plea, this court held that "[i]nherent in the court's

---

rather, they would look to the controlling language of HRS ch. 853 to ascertain whether the trial courts possessed the discretion to allow DAG and DANC pleas in any given matter. *See, e.g., State v. Tom,* 69 Haw. 602, 603–04, 752 P.2d 597, 598 (1988); *Oshiro,* 69 Haw. at 440, 443–48, 746 P.2d at 569, 571–74; *Dannenberg,* 74 Haw. at 80, 837 P.2d at 778–79; *State v. Adams,* 76 Hawai'i 408, 415, 879 P.2d 513, 520 (1994); *State v. Hamili,* 87 Hawai'i 102, 952 P.2d 390 (1998); *State v. Putnam,* 93 Hawai'i 362, 368, 3 P.3d 1239, 1245 (2000); *State v. Matyas,* 10 Haw.App. 31, 38, 859 P.2d 1380, 1384 (1993); *State v. Wong,* 10 Haw.App. 148, 158, 861 P.2d 759, 765 (1993); *State v. Kimsel,* 101 Hawai'i 65, 67–68, 62 P.3d 628, 630–31 (App.2002), *cert. denied,* 101 Hawai'i 95, 63 P.3d 403 (2003).

1. HRS § 707–711(1)(a) provides as follows:

   **§ 707–711 Assault in the second degree.**
   (1) A person commits the offense of assault in the second degree if:
   (a) The person intentionally or knowingly causes substantial bodily injury to another[.]

2. HRS § 707–700 defines "bodily injury", "substantial bodily injury" and "serious bodily injury" as follows:

"Bodily injury" means physical pain, illness, or any impairment of physical condition.

. . . .

"Substantial bodily injury" means bodily injury which causes:
   (1) A major avulsion, laceration, or penetration of the skin;
   (2) A burn of at least second degree severity;
   (3) A bone fracture;
   (4) A serious concussion; or
   (5) A tearing, rupture, or corrosive damage to the esophagus, viscera, or other internal organs.

. . . .

"Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any body member or organ.

3. It has been said that "'[i]nherent powers of the court are derived from the state Constitution and are not confined by or dependent on statute.'" *Enos v. Pacific Transfer & Warehouse, Inc.,* 79 Hawai'i 452, 458, 903 P.2d 1273, 1279 (quoting *Richardson,* 76 Hawai'i at 507, 880 P.2d at 182 (citations omitted)), *reconsideration denied,* 80 Hawai'i 187, 907 P.2d 773 (1995).

power in the disposition of a matter properly before [it] is the power to grant or deny, where applicable, a motion for DAG plea." 56 Haw. at 294, 535 P.2d at 128. It was concluded that "such power *is necessarily implicit in the proper and ordinary administration of justice.*" [4] *Id.* (emphases added). The defendant in *Martin* pled guilty to the charge of theft in the third degree and moved for a DAG plea. *See id.* at 293, 535 P.2d at 127. The sentencing judge summarily rejected the motion and stated that "he did not and would not under any circumstances consider any motion for deferred acceptance of a guilty plea." *Id.* This court held that the trial court had the inherent power to grant or deny such a plea, and when "the sentencing judge, arbitrarily and capriciously, refuses to entertain at any time a seasonable and proper motion made by a defendant for a DAG plea, ... such judicial conduct is improper, and prejudicially denies appellant due process of law." *Id.* at 294, 535 P.2d at 128.[5]

In fact, recognition of this inherent power in entertaining and granting motions for deferred acceptance pleas preceded the legislature's passage :of HRS chapter 853, which sets forth those offenses subject to DAG and DANC pleas. *See* 1976 Haw. Sess. L. Act 154, § 1–4, at 279–81 (stating effective date as May 27, 1976). Prior to the initial enactment of chapter 853, the judiciary's own "Deferred Acceptance of Plea Program ... [had been] in effect in the district court since 1971," and "[a] similar DAG Program [had] also been instituted in the circuit court." *Martin,* 56 Haw. at 294 n. 2, 535 P.2d at 128 n. 2. In light of this history, the legislature's failure to specifically preclude a deferred acceptance plea for instances involving "substantial bodily injury" leaves undisturbed the court's inherent power to grant or deny Defendant's motion for a DANC plea.[6] *Cf. State v. Oshiro,* 69 Haw. 438,. 447, 746 P.2d 568, 573 (1987) (determining that negligent homicide in the second degree, "HRS 707–704 is not within the group of offenses subject to HRS 853–4(1)[ ]", which "evidences that the legislature did not mean to divest a trial court of the discretion to grant a DAG plea or a DANC plea for violations of HRS § 707–704").

To the extent the legislature has established the parameters of DAG and DANC plea dispensation via HRS chapter 853, it has not done so when "substantial bodily injury" results. *Cf. LeMay v. Leander,* 92 Hawai'i 614, 621, 994 P.2d 546, 553 (2000) (noting that, "[a]lthough the power to punish for contempt is an inherent power of the courts, the legislature may establish alternative procedures and penalties that do not unduly

---

4.  Similarly, in *Brown,* the Intermediate Court of Appeals (ICA) held that "the trial court has inherent power to grant or deny a motion for DANC plea." 1 Haw.App. at 603, 623 P.2d at 893. The ICA further noted that, "[i]n our view, the power to receive a plea necessarily includes the power to defer its acceptance. '(S)uch power is necessarily implicit in the proper and orderly administration of justice.'" *Id.* (quoting *Martin,* 56 Haw. at 294, 535 P.2d at 127). Thus, both this court and the ICA have clearly recognized an inherent power in the trial courts to grant or deny a motion for a deferred plea.

5.  The following cases are not contrary to *Martin* and cases holding similarly, inasmuch as they refer to HRS chapter 853, and the existence of that chapter did not require consideration of the trial court's inherent power: *State v. Putnam,* 93 Hawai'i 362, 368, 3 P.3d 1239, 1245 (2000); *State v. Hamili,* 87 Hawai'i 102, 104–07, 952 P.2d 390, 392–95 (1998) (per curiam); *State v. Adams,* 76 Hawai'i 408, 415, 879 P.2d. 513, 520 (1994); *State v. Dannenberg,* 74 Haw. 75, 80, 837 P.2d 776, 778–79, *reconsideration denied,* 843 P.2d 144 (1992); *State v. Tom,* 69 Haw. 602, 603–04, 752 P.2d 597, 598 (1988); *State v. Oshi-*

*ro,* 69 Haw. 438, 440, 443–48, 746 P.2d 568, 569, 571–74 (1987); *State v. Kimsel,* 101 Hawai'i 65, 67–68, 62 P.3d 628, 630–31 (App.2002), *cert. denied,* 101 Hawai'i 95, 63 P.3d 403 (2003); *State v. Matyas,* 10 Haw.App. 31, 38, 859 P.2d 1380, 1384 (1993).

6.  In *Brown,* the ICA noted that "[i]t is a settled rule of statutory interpretation that 'the legislature, in the enactment of a statute, will not be presumed to intend to overturn long established legal principles, unless such intention is made clearly to appear by express declarations or by necessary implication[.]'" 1 Haw.App. at 604, 623 P.2d at 893 (quoting 73 Am.Jur.2d *Statutes* § 181 (1974) (citations omitted). The *Brown* court further stated that "we think the rule applies as much to *inherent powers* as it does to long established legal principles." *Id.* (emphasis added) (internal quotation marks omitted). The legislature has made no express declaration, within HRS chapter 853, prohibiting trial courts from granting a DAG or DANC plea when "substantial bodily injury" results.

restrict or abrogate the court's contempt power").[7] The legislature has not prohibited a trial court from granting a DANC plea for assault in the second degree.

Furthermore, "[i]t is also abundantly clear that[,] when properly exercised, the judge's discretionary action[, such as granting or denying a DAG or DANC plea,] will not be disturbed ... unless there has been a plain and manifest abuse of such a discretion." *Martin,* 56 Haw. at 294, 535 P.2d at 128. The State of Hawai'i (the prosecution) has not argued any such abuse of discretion. Thus, if the legislature has not spoken, as it clearly has not in this case, of whether HRS § 707–711(1)(a) is subject to a DAG or DANC plea, it is left to the court in the exercise of its inherent power and discretion to determine whether, in any *particular* case, a motion for a DAG or DANC plea should or should not be granted.

Based upon the foregoing, I concur that the prosecution's petition for a writ directed to a judge must be denied.

### Dissenting Opinion of MOON, C.J., in which NAKAYAMA, J., joins.

In interpreting statutes, this court has stated:

> The starting point in statutory construction is to determine the legislative intent from the language of the statute itself. Our foremost obligation when interpreting a statute is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself. We read statutory language in the context of the entire statute, and construe it in a manner consistent with its purpose. A rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable. *The legislature is presumed not to intend an absurd result, and*

*legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality.*

*State v. Bautista,* 86 Hawai'i 207, 209–10, 948 P.2d 1048, 1050–51 (1997) (emphasis added) (citations, brackets, and quotation marks omitted). I believe the majority's interpretation of Hawai'i Revised Statutes (HRS) § 853–4 (Supp.2002) leads to an inconsistent, contradictory, and illogical result. I, therefore, respectfully dissent.

The prosecution contends that Respondent violated HRS § 853–4(2) "by granting a deferral for a crime involving intentional or knowing causation of bodily injury." For the reasons discussed herein, I agree.

HRS § 853–4(2) provides that deferred acceptance of no contest (DANC) pleas are not available when

> [t]he offense charged is a felony that involves the intentional, knowing, or reckless bodily injury or serious bodily injury of another person, or is a misdemeanor or petty misdemeanor that carries a mandatory minimum sentence and that involves the intentional, knowing, or reckless bodily injury or serious bodily injury of another person[.]

The question, then, is whether the crime charged in the present case involves "serious bodily injury" or "bodily injury."

Here, the defendant was charged with assault in the second degree for punching, and thereby cutting and breaking, another person's nose. HRS § 707–711(1)(a) (1993) provides that a person commits the offense of assault in the second degree if "[t]he person intentionally or knowingly causes *substantial bodily injury* to another." [1] (Emphasis added.) As used in HRS chapter 707, "substantial injury" means *bodily injury* that causes:

---

7. In *Keahi,* this court specifically noted that it did "not pass upon the issue of whether § 853–1, as amended in 1979, impermissibly infringes upon the judiciary's inherent power to accept deferred acceptance of guilty pleas." 66 Haw. at 365 n. 1, 662 P.2d at 213 n. 1; *see also Brown,* 1 Haw.App. at 603 n. 4, 623 P.2d at 893 n. 4 (noting that it did "not reach the issue whether the legislature has the power to legislate judicial

procedure which it possibly has done in the enactment of HRS chapter 853").

1. Prior to 1986, HRS § 707–700 defined only two classifications of injury to the person: "bodily injury" and "serious bodily injury." "Substantial bodily injury" was added by the legislature in 1986. 1986 Haw. Sess. L. Act 314, § 48 at 614.

(1) A major avulsion, laceration, or penetration of the skin;

(2) A burn of at least second degree severity;

(3) A bone fracture;

(4) A serious concussion; or

(5) A tearing, rupture, or corrosive damage to the esophagus, viscera, or other internal organs.

HRS § 707–700 (1993). In contrast, "serious bodily injury" is *"bodily injury* which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ," and. "bodily injury" "means physical pain, illness, or any impairment of physical condition." *Id.* (emphasis added). Thus, HRS § 707–700 classifies injuries to the person based upon the degree of severity. The least severe injuries come under "bodily injury," intermediate injuries are classified under "substantial bodily injury," and the most severe injuries fall under "serious bodily injury." *See* Hse. Conf. Comm. Rep. No. 51–86, in 1986 House Journal, at 937 ("The definition of bodily injury has been expanded to include an intermediate level on substantial bodily injury.... 'Substantial bodily injury' has been added to account for injuries which are far more serious than mere bodily injury but do not approximate a risk of death or permanent loss or disfigurement.").

As indicated by the prosecution, it is inherent in the classification scheme created by HRS § 707–700 that classifications for less severe injuries are necessarily subsumed within those for more severe injuries. For example, a major laceration or bone fracture constituting "substantial bodily injury" necessarily involves "bodily injury," *i.e.,* physical pain, illness, or an impairment of physical condition. This logic is supported by the plain language of HRS § 707–700, which defines both "substantial bodily injury" and "serious bodily injury" as forms of "bodily injury."

The defendant in the present case was charged with assault in the second degree, a felony involving the intentional or knowing causation of "substantial bodily injury." As noted *supra,* the plain language of HRS § 707–700 indicates that "substantial bodily injury" necessarily subsumes "bodily injury." Because HRS § 853–4 clearly provides that DANC pleas are not available in cases where the defendant is charged with a felony that involves the intentional, knowing, or reckless causation of "bodily injury," a DANC plea is not available to the defendant in the present case.

The majority maintains that it is bound by the plain language of HRS § 853–4 to affirm Respondent's interpretation because HRS § 707–700 defines three degrees of physical injury and HRS § 853–4 forecloses deferral for only two of them. As the prosecution notes, however, even if we were to conclude that the language of the HRS § 853–4 appears to plainly exclude crimes involving "substantial bodily injury," the inquiry does not end there. In a case interpreting HRS § 853–4, this court has previously noted that statutory language that appears to be clear and unambiguous may be ambiguous when read in the context of the entire statute. *See State v. Sylva,* 61 Haw. 385, 387–89, 605 P.2d 496, 498–99 (1980). As interpreted by the majority, HRS § 853–4(2) would prohibit DANC pleas to defendants charged with felonies involving the least and the most severe physical injuries, but would allow DANC pleas to defendants who cause intermediate injuries. Clearly, the legislature could not have intended such an anomalous result.

The legislative history indicates that, when HRS § 853–4 was amended to include the terms "bodily injury" and "serious bodily injury," those were the only two definitions of physical injury included in HRS § 707–700. 1980 Haw. Sess. L. Act 292 § 2 at 557–58; HRS § 707–700 (1976). By amending HRS § 853–4 to prohibit DANC pleas to defendants charged with felonies involving "bodily injury" and "serious bodily injury," the legislature clearly intended to exclude those defendants charged with felonies involving the intentional, knowing, or reckless causation of *any* form of physical injury to another person. In my view, the addition of an intermediate category of physical injury does not

change nor affect the legislative intent of the statute. Therefore, I believe allowing a DANC plea to a defendant charged with intentionally or knowingly causing substantial bodily injury is contrary to the legislature's intent. Accordingly, based upon the foregoing, I would grant the petition for a writ directed to a judge.